# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TAIHO PHARMACEUTICAL CO. LTD. and TAIHO ONCOLOGY, INC. Plaintiffs, v. ACCORD HEALTHCARE INC., *et al.*, Defendants. | C.A. No. 21-838-JLH **CONSOLIDATED ANDA CASE**  |

**EXHIBIT 1
JOINT STATEMENT OF UNCONTESTED FACTS**

**TABLE OF CONTENTS**

I.      THE PARTIES.................................................................................................................. 1

II.     TAIHO'S NDA NO. 207981 AND LONSURF® ......................................................... 2

III.    MSN'S ANDA AND ANDA PRODUCTS.................................................................... 2

IV.     BACKGROUND OF THE LITIGATION...................................................................... 3

        A.      PLEADINGS ..................................................................................................... 3

        B.      DISCOVERY REGARDING VALIDITY/INVALIDITY.................................... 5

        C.      MSN'S STIPULATION TO INFRINGEMENT AND THE
                COURT'S ORDER OF INFRINGEMENT........................................................ 5

        D.      ASSERTED CLAIMS ....................................................................................... 7

        E.      CLAIM CONSTRUCTION............................................................................... 9

V.      THE ASSERTED PATENTS ......................................................................................... 9

        A.      GENERAL OVERVIEW................................................................................... 9

        B.      PROSECUTION HISTORY OF THE ASSERTED PATENTS ......................... 10

                1.      The '073 Application and '399 Patent...................................................... 10

                2.      The '180 Application and '004 Patent...................................................... 19

i

## JOINT STATEMENT OF UNCONTESTED FACTS

Pursuant to Local Rule 16.3(c)(3), Plaintiffs Taiho Pharmaceutical Co., Ltd. and Taiho Oncology, Inc. ("Taiho" or "Plaintiffs") and Defendants MSN Laboratories Private Ltd., MSN Pharmaceuticals Inc. (collectively, "MSN" or "Defendants"), submit the following statement of facts believed to be uncontested in this case. The facts herein are limited to the claims from each asserted patent that is currently at issue. Taiho and Defendants reserve the right to further modify, supplement and/or amend the Final Pretrial Order and the attachments thereto, including this exhibit, in light of any future rulings by the Court and/or issues that remain open until the entry of the Final Pretrial Order.

## I.    THE PARTIES

1.    Taiho Pharmaceutical Co., Ltd., is a corporation organized and existing under the laws of Japan, having a principal place of business at 1-27 Kandanishiki-cho, Chiyoda-ku, Tokyo 101-8444, Japan.

2.    Taiho Oncology, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 101 Carnegie Center, Suite 101, Princeton, New Jersey 08540.

3.    Defendant MSN Laboratories Private Ltd. is a private limited company registered under the ROC of Indian Law having a principal place of business at MSN House, Plot No: C-24, Industrial Estate, Sanathnagar, Hyderabad 500018, Telangana, India.

4.    Defendant MSN Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 20 Duke Road, Piscataway, New Jersey 08854.

## II.   TAIHO'S NDA NO. 207981 AND LONSURF®

5.   Taiho Oncology Inc. is the holder of New Drug Application No. 207981 for the manufacture and sale of trifluridine and tipiracil tablets, 15mg and 20mg, which is marketed and sold in the United States under the registered trademark Lonsurf®.

6.   Lonsurf® was originally approved by the United States Food and Drug Administration ("FDA") on September 22, 2015.

7.   Lonsurf® is indicated for the treatment of metastatic colorectal cancer that has been previously treated with fluoropyrimidine-, oxaliplatin-, and irinotecan-based chemotherapy, an anti-VEGF biological therapy, and if RAS wild-type, an anti-EGFR therapy as well as the treatment of metastatic gastric or gastroesophageal junction adenocarcinoma previously treated with at least two prior lines of chemotherapy that included a fluoropyrimidine, a platinum, either a taxane or irinotecan, and if appropriate, HER2/neu-targeted therapy.

8.   Lonsurf® is a fixed-dose combination therapy intended for oral administration with two active ingredients: trifluridine (FTD), a nucleoside metabolic inhibitor, and tipiracil hydrochloride (TPI), a thymidine phosphorylase inhibitor.

9.   Pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(b)(1), and corresponding FDA regulations, Taiho currently has listed U.S. Patent Nos. 10,960,004 (the "'004 Patent") and 10,456,399 (the "'399 Patent") in the FDA's Orange Book as covering Lonsurf® and methods for using it.

## III.   MSN'S ANDA AND ANDA PRODUCTS

10.   MSN submitted to the FDA ANDA No. 214024 under 21 § U.S.C 355(j), seeking approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of generic trifluridine/tipiracil HCl tablets (Eq 6.14 mg Base, 15 mg, Eq 8/19 mg, Base, 20 mg) ("MSN ANDA Products") before the expiration of the '004 and '399 Patents.

2

11.     MSN's ANDA No. 214024 included certifications under 21 U.S.C. 355(j)(2)(A)(vii)(IV) ("MSN Paragraph IV certification") asserting that the '004 and '399 Patents are invalid, unenforceable, or not infringed by the MSN ANDA Products.

## IV.    BACKGROUND OF THE LITIGATION

12.     Taiho filed two separate suits against MSN: one alleging infringement of the '004 Patent (C.A. No. 21-00838)[1] and the second alleging infringement of the '399 Patent, along with other patents that are not at issue here (C.A. No. 19-02342).  On November 13, 2023, the '399 Patent was severed from C.A. No. 19-02342 and consolidated with C.A. No. 21-00838.  C.A. No. 19-02342, D.I. 187.

### A.    Pleadings

13.     On March 16, 2020, Taiho alleged infringement of the '399 Patent against MSN. C.A. No. 19-02342, D.I. 18.  Taiho's allegation of infringement of the '399 Patent was based on MSN's filing of the MSN ANDA and the accompanying MSN Paragraph IV certification.  *Id.*

14.     On March 30, 2020, MSN filed an answer to Taiho's allegation of infringement of the '399 Patent, asserting the following affirmative defenses: (i) noninfringement, (ii) invalidity, (iii) failure to state a claim upon which relief can be granted, (iv) Taiho may not seek injunctive relief because Plaintiff's damages are not immediate or irreparable, (v) "Defendants have not infringed, are not infringing and will not infringe, directly or indirectly, any valid claim of the . . . [']399 . . . patent[], and all activities performed by Defendants in relation to Defendants' proposed ANDA product have solely been for uses reasonably related to the development and submission

---

[1] The original case number was C.A. No. 23-00008.  Taiho sued other entities on the '004 and '399 Patents, and so C.A. No. 23-00008 was consolidated with the lawsuits against the other entities in C.A. No. 21-00838.  C.A. No. 21-00838, D.I. 94.  Those other entities were dismissed from the litigation by stipulation, leaving MSN as the only defendant in this case.  *See* C.A. No. 21-00838, D.I. 8 (dismissing Intas); D.I. 116 (dismissing Accord); D.I. 118 (dismissing Eugia and Aurobindo); D.I. 120 (dismissing Natco).

of information under a federal law which regulates the manufacture, use, or sale of drugs"), and (vi) "[a]ny additional defenses that discovery may reveal." C.A. No. 19-02342, D.I. 20. MSN's Answer also asserted counterclaims seeking declaratory judgment of non-infringement and invalidity of the '399 Patent.

15. On April 20, 2020, Taiho answered MSN's counterclaims, denying the substantive allegations and each claim for relief. C.A. No. 19-02342, D.I. 25.

16. On January 3, 2023, Taiho alleged infringement of the '004 Patent against MSN based on the filing of the MSN ANDA and the accompanying MSN Paragraph IV certification. C.A. No. 23-00008-UNA, D.I. 1.

17. On March 15, 2023, MSN filed an Answer, denying that Taiho was entitled to its requested relief and asserting the following affirmative defenses: (i) non-infringement, (ii) invalidity, (iii) failure to state a claim upon which relief can be granted, and (iv) Taiho may not seek injunctive relief because Plaintiff's damages are not immediate or irreparable, (v) "Defendants have not infringed, are not infringing and will not infringe, directly or indirectly, any valid claim of the [']004 patent, and all activities performed by Defendants in relation to Defendants' proposed ANDA product have solely been for uses reasonably related to the development and submission of information under a federal law which regulates the manufacture, use, or sale of drugs"), and (vi) "any additional defenses the basis for which may be revealed in discovery or otherwise." C.A. No. 21-00838-JLH, D.I. 32. MSN's Answer also asserted counterclaims seeking declaratory judgment of non-infringement and invalidity of the '004 Patent.

18. On March 23, 2023, Taiho answered MSN's counterclaims, denying the substantive allegations and each claim for relief. C.A. No. 21-00838-JLH, D.I. 34.

4

**B.    Discovery Regarding Validity/Invalidity**

19.    MSN served invalidity contentions, including amendments and supplements thereto, on August 11, 2020, September 11, 2020, April 30, 2021, October 4, 2021, June 9, 2023 and August 24, 2023.  C.A. No. 19-02342, D.I. 43, D.I. 47, D.I. 69, D.I. 85; C.A. No. 21-00838-JLH, D.I. 55; D.I. 66.

20.    On July 22, 2021, MSN served an opening expert report regarding invalidity of the '399 Patent by Dr. Robert Dreicer.  On September 20, 2021, Taiho served a rebuttal expert report regarding validity of the '399 Patent by Dr. Richard Goldberg.  C.A. No. 19-02368, D.I. 84.  On November 19, 2021, MSN served a reply expert report regarding invalidity of the '399 Patent by Dr. Dreicer.  C.A. No. 19-02342, D.I. 87.

21.    On May 23, 2025, MSN served an opening expert report regarding invalidity of the '004 Patent and a supplemental opening expert report regarding invalidity of the '399 Patent by Dr. Dreicer.  C.A. No. 21-00838-JLH, D.I. 136.  On July 8, 2025, Taiho served rebuttal expert reports regarding validity of the '004 and '399 Patents by Drs. David Taft and Dr. Thomas Abrams.  C.A. No. 21-00838-JLH, D.I. 138.  On August 8, 2025, MSN served a reply expert report regarding invalidity of the '004 and '399 Patents by Dr. Dreicer.  C.A. No. 21-00838-JLH, D.I. 141.

22.    Taiho's experts on validity of the '399 and '004 Patents are Drs. Taft and Abrams.  MSN's expert on invalidity of the '399 and '004 Patents is Dr. Dreicer.

**C.    MSN's Stipulation to Infringement and the Court's Order of Infringement**

23.    On December 14, 2023, the Court entered the parties' joint stipulation submitted to the Court that MSN infringes claims 1-4, 7, 17, 18, 20, 24, and 28 of the '004 Patent and claim 10 of the '399 Patent ("Asserted Claims").  C.A. No. 21-00838-JLH, D.I. 99.  Specifically, the parties stipulated to, and the Court entered, that:

- "MSN's submission of ANDA No. 214024 with MSN's Paragraph IV Certification constitutes infringement of the Asserted Claims of the '004 and '399 patent[s] pursuant to 35 U.S.C. § 271(e)(2)(A), to the extent those claims are not proven invalid or unenforceable." *Id.*

- "The commercial manufacture, use, offer for sale, and/or sale in the United States, and/or importation into the United Sates, of MSN's ANDA Products prior to the expiration of the '004 patent and the '399 patent would further infringe, pursuant to 35 U.S.C. § 271(a), the Asserted Claims of the '004 patent and the '399 patent, to the extent those claims are not proven invalid or unenforceable." *Id.*

- "MSN stipulates that making, offering to sell, selling, or importing MSN's ANDA Products prior to the expiration of the '004 patent and the '399 patent would actively induce and contribute to infringement, pursuant to 35 U.S.C. § 271(b)-(c), of the Asserted Claims of the '004 patent and the '399 patent, to the extent those claims are not proven invalid or unenforceable." *Id.*

- "If any Asserted Claim of the '004 patent is asserted at trial in this litigation and is found to not be invalid or unenforceable, Taiho shall be entitled to a judgment of infringement against MSN, pursuant to 35 U.S.C. § 271(a)-(c), (e)(2)(A), and the issuance of an order pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of ANDA No. 214024 shall be no earlier than the date on which the '004 patent expires, including any patent term and regulatory extensions." *Id.*

- "If any Asserted Claim of the '399 patent is asserted at trial in this litigation and is found to not be invalid or unenforceable, Taiho shall be entitled to a judgment of infringement against MSN, pursuant to 35 U.S.C. § 271(a)-(c), (e)(2)(A), and the

6

issuance of an order pursuant to 35 U.S.C. § 271(e)(4)(A) that the effective date of any approval of ANDA No. 214024 shall be no earlier than the date on which the '399 patent expires, including any patent term and regulatory extensions." *Id.*

- "By entering into [the] stipulation, MSN does not admit the validity of any Asserted Claim of the '004 patent, and the '399 patent." *Id.*

24.    Given MSN's stipulation to infringement of the '004 and '399 Patents, only validity of the Asserted Claims of the '004 and '399 Patents remains disputed between the parties.

### D.    Asserted Claims

25.    Claims 1-4, 7, 17-18, 20, 24, and 28 of the '004 Patent and claim 10 of the '399 Patent are asserted against MSN.  Claim 10 of the '399 Patent depends from claim 2, which depends from independent claim 1.

26.    Claims 1-4, 7, 17-18, 20, 24, and 28 of the '004 Patent read as follows:

Claim 1:

A method for treating cancer which is one of gastrointestinal cancer, large bowel cancer or breast cancer in a patient with a creatinine clearance of 15 mL/min-29 mL/min, comprising:
orally administering a drug comprising α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[ (2-iminopyrrolidine- l-yl)methyl]pyrimidine-2,4(1 H,3H)-dione hydrochloride in a molar ratio of 1:0.5, at a daily dose of 30 to 40 mg/m$^2$/day as FTD-equivalent, in two to four doses a day to the patient with a creatinine clearance of 15 mL/min-29 mL/min.

Claim 2:

The method of claim 1, wherein a dose of 40 mg/m$^2$/day as FTD-equivalent is administered in two doses a day.

Claim 3:

The method of claim 1, wherein an administration scheduled is 5-day consecutive oral administration and 2-day rest, per week.

Claim 4:

7

The method of claim 1, wherein an administration schedule of 5-day consecutive oral administration and 2-day rest is repeated twice, followed by rest for 14 days.

Claim 7:

The method of claim 6, wherein colorectal cancer is treated.

Claim 17:

The method of claim 2, wherein an administration schedule is 5-day consecutive oral administrations and 2-day rest, per week.

Claim 18:

The method of claim 2, wherein an administration schedule of 5-day consecutive oral administrations and 2-day rest is repeated twice, followed by rest for 14 days.

Claim 20:

The method of claim 1, wherein colorectal cancer is treated.

Claim 24:

The method of claim 3, wherein colorectal cancer is treated.

Claim 28:

The method of claim 4, wherein colorectal cancer is treated.

27.    Claims l, 2, and 10 of the '399 Patent read as follows:

Claim 1:

A method for treating cancer which is one of gastrointestinal cancer, large bowel cancer and breast cancer, comprising:
detecting a creatinine clearance of a patient; and
orally administering to the patient with a creatinine clearance of less than 30 mL/min a combination drug comprising α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[(2-iminopyrrolidine-l-yl)methyl]pyrimidine-2,4(1 H,3H)-dione hydrochloride in a molar ratio of 1:0.5, a daily dose of 30 to 40 mg/m2/day as FTD-equivalent, divided into two to four portions for administration.

Claim 2:

8

The method of treating cancer according to claim 1, wherein the combination drug is administered to the patient with a creatinine clearance of 15 mL/min or more and 29 mL/min or less.

Claim 10:

The method for treating cancer according to claim 2, wherein a dose of 40 mg/m²/day as FTD-equivalent is divided into two portions.

### E.    Claim Construction

28.    On February 28, 2023, the Parties submitted to the Court that there was no need for claim construction at that time, but proposed that if necessary, claim construction would be addressed at trial and in post-trial briefing.  C.A. No. 21-cv-00838-CFC, D.I. 27 at 17.  No party has contended that claim construction is required in this matter.

## V.    THE ASSERTED PATENTS

### A.    General Overview

29.    Taiho Pharmaceutical Co., Ltd. is the owner of all right, title, and interest in the Asserted Patents.

30.    Both Asserted Patents belong to the same patent family and share the same specification, disclosure, and figures.

31.    Both Asserted Patents claim a priority date of February 5, 2016, which is the filing date of U.S. Provisional Application No. 62/291,799.

32.    The '399 Patent issued October 29, 2019, from U.S. Patent Application No. 16/054,073 (the "'073 Application"), filed August 3, 2018.  The '399 Patent is a continuation of International Application No. PCT/JP2017/003994, filed February 3, 2017.  The '399 Patent is titled "Method for Treating Cancer Patients with Severe Renal Impairment" and names as the inventor Kenichiro Yoshida.

33.    The '004 Patent issued on March 30, 2021, from U.S. Application No. 16/574,180 (the "'180 Application), filed September 18, 2019, as a continuation of the '073 Application.  The '004 Patent is titled "Method for Treating Cancer Patients with Severe Renal Impairment" and names as the inventor Kenichiro Yoshida.

34.    Both Asserted Patents expire on February 3, 2037.

### B.  Prosecution History of the Asserted Patents

### 1.    The '073 Application and '399 Patent

35.    The '073 Application was filed on August 3, 2018, with 28 claims.  Original claim 1 is reproduced below:

> A method for treating cancer in patients with creatinine clearance of less than 30 mL/min, comprising dividing a combination drug containing α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[(2-iminopyrrolidine-1-yl)methyl]pyrimidine-2,4(1H,3H)-dione hydrochloride in a molar ratio of 1 : 0.5, in a dose of 30 to 50 mg/m$^2$/day as FTD-equivalent, into two to four times a day, and orally administering it to the patient.

36.    On August 3, 2018, Taiho also filed an IDS, disclosing several references, which the examiner considered on September 25, 2018.

37.    On August 3, 2018, Taiho also requested Track One prioritized examination of the '073 Application, which was granted.

38.    On August 24, 2018, Taiho filed a supplemental IDS disclosing three references: (i) "Mayer et al., 'Randomized Trial of TAS-102 for Refractory Metastatic Colon Cancer,' The New England Journal of Medicine, May 14, 2015"; (ii) the clinical trial protocol referenced in Mayer et al.—"Protocol No.: TPU-TAS-102-301"; and (iii) "A Phase I Study of TAS-102 in Patients with Advanced Solid Tumors with Renal Impairment, ClinicalTrials.gov."  The parties refer to "A Phase I Study of TAS-102 in Patients with Advanced Solid Tumors with Renal

Impairment, ClinicalTrials.gov" as NCT '117, and MSN asserts NCT '117 as prior art against the

Asserted Patents.  The examiner considered these references on September 25, 2018.

39.     On August 24, 2018, Taiho also filed a preliminary amendment, amending claim 1

as shown below:

> 1. A method for treating cancer ~~in patients with creatinine clearance~~ ~~of less than 30 mL/min~~, comprising:
> detecting a creatinine clearance of a patient before starting a treatment; and
> ~~dividing~~ starting the treatment by orally administering to the patient with a creatinine clearance of less than 30 mL/min a combination drug ~~containing~~ comprising α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[(2-iminopyrrolidine-1-yl)methyl]pyrimidine-2,4(1H,3H)-dione hydrochloride in a molar ratio of 1 : 0.5, [[in]] a dose of 30 to 40 [[50]] mg/m²/day as FTD-equivalent, [[into]] in two to four divided doses ~~times a day, and orally administering it to the~~ ~~patient~~.

40.     In the preliminary amendment, Taiho also amended claims 2-5, canceled claims 8-

28, and added new claims 29-51.

41.     In the remarks accompanying Taiho's preliminary amendment, Taiho stated:

> The enclosed IDS includes the article titled 'Randomized Trial of TAS-102 for Refractory Metastatic Colon Cancer' in the May 14, 2015 issue of the New England Journal of Medicine ('2015 article') and the Protocol referenced in the 2015 article.  The 2015 article reports on clinical trials of TAS-102, the combination drug recited in claim 1, but the patients were not those with severe renal impairment having a significantly low level (less than 30 mL/min) of creatinine clearance.  There were two instances where the initial dose of 70 mg/m²/day was reduced in three 5 mg steps to 40 mg/m²/day because of adverse events.  See page 1916 of the 2015 article and page 39 of the Protocol.  But neither of the patients had a creatinine clearance of less than 30 mL/min.
>
> Prior to the present invention there were no reported instances of treating patients with severe renal impairment having a significantly low level (less than 30 mL/min) of creatinine clearance with TAS-102.  To determine an effective treatment and an appropriate dose for such patients[,] Applicant studied the effect of dosing on the AUC level. Specifically, Applicant calculated the effect of dosing

11

using a regression analysis as shown in Table 2 in the specification, [0047]. The calculation shows that the AUC of severely impaired renal function patients at a dose of 25 mg/m2 (50 mg/m$^2$/day) results in almost doubling the AUC. This indicates that those with low levels of creatinine clearance may have unacceptably high levels of TAS-102 in the blood instead of being excreted in the urine, which may cause an unacceptable level of adverse events and poor patient compliance. On the other hand, too low an AUC could result in the drug not providing [the] desired anti-cancer benefit.

By starting a treatment of the patient with severe renal impairment at a dose of from 30 to 40 mg/m$^2$/day the method of claim 1 can provide successful cancer treatment at a tolerable level of adverse events. Prior to the present invention this had not been considered possible.

42.     In a Non-Final Office Action dated October 9, 2018, the pending claims were rejected under 35 U.S.C. § 112(a) for lack of enablement for the "treatment of cancer without limitation (i.e., no named cancer)." The Examiner noted, however, that the specification was "enabling for using instant composition for treating colon cancer [and] breast cancer." After noting that the "instant claimed invention is highly unpredictable," the Examiner noted that the rejection could be overcome by incorporating a "named cancer supported by the specification (i.e., see claims 6-7 and 29-30) into claim 1." Claim 6 recited, in part, "wherein the cancer is gastrointestinal cancer or breast cancer." Claim 7, recited in part, "wherein the cancer is large bowel cancer." And claims 29 and 30 recited in part "wherein the cancer is gastrointestinal cancer" (claim 29) and "wherein the cancer is breast cancer" (claim 30).

43.     The Examiner also rejected the claim under § 112(b) for the phrase "in two to four divided dose[s]" as being indefinite and ambiguous. The pending claims were also rejected under 35 U.S.C. § 103 as being unpatentable over the combination of: (i) Doi et al. (British Journal of Cancer, 2012, 107:429-434); (ii) Sakamoto et al. (U.S. Publication No. 2016/0082032); (iii) Ito et al. (U.S. Publication No. 2014/0213602); (iv) Emura et al. (U.S. Patent No. 7,799,783); (v) Ito et

12

al. (U.S. Patent No. 9,371,380); and (vi) Hurria et al. (Drugs Aging, 2005, 22(9): 785-791). The pending claims were also rejected for obviousness-type double patenting over Emura et al. and Ito et al. in view of Hurria et al.

44.     In a Non-Final Office Action response dated January 9, 2019, Taiho amended claim 1 as follows:

> 1. A method for treating cancer <u>which is one of gastrointestinal cancer, large bowel cancer and breast cancer</u>, comprising:
> detecting a creatinine clearance of a patient <s>before starting a treatment</s>; and <s>starting the treatment by</s> orally administering to the patient with a creatinine clearance of less than 30 mL/min a combination drug comprising α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[(2-iminopyrrolidine-1-yl)methyl]pyrimidine-2,4(1H,3H)-dione hydrochloride in a molar ratio of 1 : 0.5, a <u>daily</u> dose of 30 to 40 mg/m²/day as FTD-equivalent, <u>divided into two to four portions for administration</u> <s>in two to four divided doses</s>.

45.     Taiho also amended claims 3 and 31. In its response to the examiner, Taiho explained that "[i]t is the examiner's position that it would be obvious to reduce the dose for patients with severe renal impairment.  The examiner has provided no evidence that dose reduction would be possible while maintaining the drug's efficacy.  The evidence is to the contrary."  Taiho directed the Examiner to a presentation by Emura et al. comparing TAS-102 with Teysuno— another orally administered cancer drug containing a 5-FU (fluorouracil) prodrug. Taiho further stated:

> TAS-102 and Teysuno® both involve inhibition of thymidylate synthase and its incorporation into DNA. Teysuno® has been approved in Europe, and attached is a copy of the label for Teysuno® including the 5-FU prodrug tegafur. The label reports that Teysuno® should not be used on patients with severe renal impairment. . . .
>
> The dose modification section [of the Teysuno® label] for renal impairment on page 6 reads (underline added):

13

- Severe renal impairment (CrCl below 30 mL/min)
- Although roughly similar daily exposure to 5-FU would be expected in patients with severe renal impairment at a dose of 20 mg/m2 once daily compared to 30 mg/m2 twice daily in patients with normal renal function (see section 5.2), administration of Teysuno is not recommended due to possibly higher incidence of adverse events of the blood and lymphatic system disorders unless the benefits clearly outweigh the risks (see sections 4.4 and 4.8).

. . . Thus, the label clearly shows that a dose reduction did not work for administering Teysuno® to patients severe renal impairment.

Based on such issue with Teysuno® that raised the concern for higher incidence of adverse events, there was no reason to expect that it would be different for TAS-102. As stated above, Teysuno® and TAS-102 both involve inhibition of thymidylate synthase and its incorporation into DNA. Since a dose reduction did not work for Teysuno®, one skilled in the art would not have reasonably expected that a simple dose reduction for TAS-102 would lead to an effective treatment without concern for higher incidence of adverse events.

None of the references cited by the examiner concern the administration of TAS-102 to patients with severe renal impairment. This is not surprising given the warnings for Teysuno®. None of the cited references contains any direction for using TAS-102 in patients with severe renal failure. . . . The only evidence concerned with renal impairment and an orally administered drug is Teysuno® where the European Medicine Agency (EMA) clearly stated that Teysuno® cannot be administered to patients with severe renal impairment."

46. To address the examiner's obviousness-type double patenting rejection, Taiho explained that "Emura and Ito are prior art and cannot be properly applied as double patenting. Neither of these patents when taken with Hurria suggests that it is possible to successfully reduce the TAS-102 dose in patients with severe renal failure."

47. In a Final Office Action dated March 8, 2019, the Examiner found that Taiho's claim amendments overcame the rejections under § 112, and found that the arguments Taiho made to overcome the Examiner's section § 103 rejection over Doi et al., Sakomoto et al., Ito et al., and

14

Hurria et al. were "persuasive," confirming those prior art references were "distinct from the instant invention." The Examiner further found that Taiho's arguments regarding the examiner's obviousness-type double patenting rejection over Ito et al. in view of Hurria et al. were "persuasive." The examiner maintained their section § 103 and obviousness-type double patenting rejections over Emura et al in view of Huria et al because "Applicant's arguments" were "not persuasive." The examiner explained, "the instant dosage range and administration, 30 to 40 mg/m²/day divided into two to four portions, are embraced within the scope of Emura et al. '783, which is from 20 to 80 mg/m²/day in terms of FTD in 2 to 4 divided portions."

48. On July 11, 2019, Taiho and the Examiner discussed the Examiner's § 103 and obviousness-type double patenting rejections during a telephone interview.

49. Taiho filed a Final Office Action response on July 12, 2019, stating that: "The office action asserts that Hurria suggests that reducing the dose of an anti-cancer drug to patients with impaired renal clearance would be obvious. This assertion is incorrect because Hurria is not directed to a renally impaired patient population. . . . . Of the patients reviewed 97% had a normal creatinine [clearance]." Taiho also stated "[n]ote that the creatinine clearance values were calculated not measured." As Taiho further explained, Hurria concludes that "'[p]rospective studies are needed to compare the actual versus calculated $CL_{CR}$ in older patients, and to study the impact of modifying chemotherapy dose according to renal function on toxicity, response, and overall survival.'" Taiho also explained that the "[f]luorouracil used by Hurria is sold in an oral, prodrug form under the trade name Teysuno®," and that "[t]he Teysuno label teaches that … (Teysuno) should not be used with renally impaired patients and that no safe dose has been identified." Taiho additionally explained that "Teysuno® and TAS-102 both involve inhibition of thymidylate synthase and its incorporation into DNA. Since a dose reduction did not work for

15

Teysuno®, one skilled in the art would not have reasonably expected that a simple dose reduction for TAS-102 would lead to an effective treatment without concern for higher incidence of adverse events." Taiho concluded "[n]one of the references cited by the examiner concern the administration of TAS-102 to patients with severe renal impairment. . . . None of the cited references contains any direction for using TAS-102 in patients with severe renal failure. . . . None of the references is concerned with administration of a renally cleared drug to patients with severe renal impairment. The only evidence concerned with renal impairment and an orally administered drug is Teysuno® where the European Medicine Agency (EMA) clearly stated that Teysuno® cannot be administered to patients with severe renal impairment."

50.     On August 9, 2019, the Examiner issued a Notice of Allowance, stating that Taiho's arguments were "persuasive" to overcome the § 103 and obviousness-type double patenting rejections. The Examiner further stated that the claims "are neither anticipated nor rendered obvious over the art of record," and that "[a] suggestion for modification of a reference to obtain the instant methods of use has not been found."

51.     On August 14, 2019, Taiho paid the issue fee. An Issue Notification was mailed on September 11, 2019.

52.     On September 12, 2019, Taiho filed a Request for Continued Examination and a supplemental IDS disclosing several references, including: (i) an Extended European Search Report issued August 27, 2019, in a related case and (ii) "Lonsurf (TAS-102), combination product of trifluridine and tipiracil hydrochloride at a molar ratio of 1:0.5." "Lonsurf (TAS-102) combination product of trifluridine and tipiracil hydrochloride at a molar ratio of 1:0.5" is a section of FDA Review Package for NDA 207981, which the parties refer to as the Lonsurf FDA Approval

16

Package.  The Lonsurf FDA Approval Package was cited in the European Search Report.  MSN

also asserts the Lonsurf FDA Approval Package as prior art against the Asserted Patents.

53.    The Extended European Search Report ("EESR") states that "[t]he present application does not meet the requirements of Article 52(1) EPC, because the subject-matter of claims 1-14 does not involve an inventive step in the sense of Article 56 EPC."

54.    The EESR states:

> D1 [Lonsurf FDA Approval Package, Clinical Pharmacology and Biopharmaceutics Review(s)] teaches that the proposed dosing regimen of Lonsurf is 35 mg/m$^2$/dose administered orally twice daily.  D1 also reports the tolerability and safety at dose levels of e.g. 30 and 35 mg/m2.  D1 further teaches that creatinine clearance (CLcr) is a significant covariate for pharmacokinetic (PK) of FTD and TPI.  D1 shows that patients with moderate renal impairment (Clcr=30 to 59 mL/min) have a higher incidence of ≥ Grade 3 adverse events, serious adverse events, and dose delays and reduction compared to patients with normal renal function and patients with mild renal impairment (CLcr = 60 to 89 mL/min). D1 additionally teaches that the mean values of AUC at steady stat for trifluridine were 31% higher in patients with mild renal impairment and 43% higher in patients with moderate renal impairment and that for patients with normal renal function. Similar effect of renal impairment on the tipiracil exposure is observed. D1 states that no dose adjustment to the starting dose of Lonsurf is recommended in patients with mild or moderate renal impairment; however patients with mild or moderate renal impairment should be monitored for increased toxicity, since tipiracil is a PKmodulator that enhances the systemic exposure of trifluridine by inhibiting TPase, the increased exposure of trifluridine in patients with mild and moderate renal impairment could be the secondary effect mediated by the increased tipiracil exposure leading to increased inhibition of trifluridine metabolism in the same patients with renal impairment. No patients with severe renal impairment (CLcr < 3 0 mL/min) were enrolled in any of the studies.
>
> The additional technical feature of claim 1 over D1 is that a dose of 30 - 50 mg/m2/day divided in two to four times a day is rally administered to patients with creatinine clearance of less than 30 mL/min.

17

The technical effect of the invention is not known because no patients with severe renal impairment are treated with the combination drug.

The problem to be solved by the present may therefore be regarded as the provision of a dosage regime for Lonsurf for patients with severe renal impairment.

The solution proposed in claim 1 of the present application cannot be considered to involve an inventive step (Articles 52(1) and 56 EPC).

D4 [Booka Eisuke et al., "Development of an S-1 dosage formula based on renal function by a prospective pharmacokinetic study," 19 Gastric Cancer (2015)] for example teaches the calculation of a dosage regime for the drug S-1 in patients with severe renal impairment based on the body surface area (BSA), creatinine clearance as estimated by the Cockcroft-Gault equation (also used in the present application and which is officially recommended for use) and the target AUC. The present application does not discuss any actual results of dosage regimes in patients with severe renal impairment. The application only theoretically determines a dosage regime on the PK of FTD (which is already known from D1), BSA and creatine clearance (as determined already in e.g. D4). Based on PK of FDA and TPI as shown in D1, the skilled person would calculate a dosage which is still effective but safe in patients with severe renal impairment without the use of inventive skills when confronted with the problem mentioned above.

55.     On September 27, 2019, the examiner "CONSIDERED" "ALL REFERENCES," above, including (i) the Clinical Pharmacology and Biopharmaceutics Review(s) Section of the Lonsurf FDA Approval Package, (ii) Munar et al., "Drug Adjustments in Patients with Chronic Kidney Disease," 15 May 2007, (iii) Doogue et al., "Drug Dosing in Renal Disease," Clin Biochem Rev. Vol. 32, May 1, 2011, (iv) Booka et al., "Development of an S-1 Dosage Formula Based on Renal Function by a Prospective Pharmacokinetic Study," Gastric Cancer, Springer Japan, Tokyo, Vol. 19, August 25, 2015, and (v) Extended European Search Report issued August 27, 2019 in European Patent Application No. 17747563.9.

56.    A second Issue Notification was mailed October 9, 2019.

57.    The '399 Patent issued October 29, 2019.

### 2.    The '180 Application and '004 Patent

58.    The '180 Application was filed on September 18, 2019, with 31 claims on.  Original claim 1 is reproduced below:

> A method for treating gastrointestinal cancer, large bowel cancer or breast cancer in a patient with a creatinine clearance of less than 30 mL/min, comprising:
> orally administering a drug comprising α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[(2-iminopyrrolidine-1-yl)methyl]pyrimidine-2,4(1H,3H)-dione hydrochloride in a molar ratio of 1 : 0.5, at a daily dose of 30 to 40 mg/m²/day as FTD-equivalent, in two to four doses a day to the patient with a creatinine clearance of less than 30 mL/min.

59.    On September 18, 2019, Taiho also filed an IDS, disclosing a number of references, including: "'Phase I Study of TAS-102 in Patients With Advanced Solid Tumors With Renal Impairment, ClinicalTrials.gov," which the parties again refer to as "NCT '117"; "'Lonsurf (TAS-102), combination product of trifluridine and tipiracil hydrochloride at a molar ratio of 1:0.5,' CLINICAL PHARMACOLOGY AND BIOPHARMACEUTICS REVIEW(S)," which is a section of the Lonsurf FDA Approval Package; Doi et al. (British Journal of Cancer, 2012, 107:429-434); Sakamoto et al. (U.S. Publication No. 2016/0082032); Ito et al. (U.S. Publication No. 2014/0213602); Emura et al. (U.S. Patent No. 7,799,783); Ito et al. (U.S. Patent No. 9,371,380); Hurria et al. (Drugs Aging, 2005, 22(9): 785-791); Doogue et al. (Clin. Biochem. Rev., vol. 32, 1 May 2011, 69-73); Hong et al. (Cancer, vol. 107, no. 6, 1 January 2006, 1383-1390); Munar et al. (Am. Fam. Physician, 15 May 2007, 1487-1496); Booka et al. (Gastric Cancer, Spring Japan, Tokyo, vol. 19, no. 3, 25 August 2015, 876-886); Mayer et al., Randomized Trial of TAS-102 for Refractory Metastatic Colon Cancer, The New England Journal of Medicine, May 14, 2015, Pages 1909-191 ("Mayer"); Protocol No.: TPU-TAS-102-301, Taiho Pharmaceutical Co.,

19

Ltd; Taiho Oncology Inc., 2014, 448 pages ("Protocol"); and the Extended European Search Report ("EESR") issued August 27, 2019 in European Patent Application No. 17747563.9 (EP counterpart to the Asserted Patents), filed February 3, 2017. MSN asserts NCT '117 and the Lonsurf FDA Approval Package as prior art against the Asserted Patents. The Examiner considered these references on December 5, 2019.

60. On December 17, 2019, Taiho filed a supplemental IDS disclosing several additional references, which the Examiner considered on January 7, 2020.

61. In a Non-Final Office Action dated January 13, 2020, the pending claims were rejected for both statutory double patenting and obviousness-type double patenting over the '399 Patent.

62. On March 13, 2020, Taiho filed a supplemental IDS, disclosing several additional references, which the Examiner considered on May 12, 2020.

63. In a Non-Final Office Action dated April 13, 2020, Taiho filed a terminal disclaimer to the '399 Patent and amended claim 1 as follows:

> 1. A method for treating gastrointestinal cancer, large bowel cancer or breast cancer in a patient with a creatinine clearance of ~~less than 30 mL/min~~ 15 mL/min – 29 mL/min, comprising:
> orally administering a drug comprising α,α,α-trifluorothymidine (FTD) and 5-chloro-6-[(2-iminopyrrolidine-1-yl)methyl]pyrimidine-2,4(1H,3H)-dione hydrochloride in a molar ratio of 1 : 0.5, at a daily dose of 30 to 40 mg/m²/day as FTD-equivalent, in two to four doses a day to the patient with a creatinine clearance of ~~less than 30 mL/min~~ 15 mL/min – 29 mL/min.

64. The terminal disclaimer was approved on April 14, 2020.

65. On June 12, 2020, the Examiner mailed a Notice of allowance, stating that the allowed claims "are neither anticipated nor rendered obvious over the art of record." The Examiner further stated that "[a] suggestion for modification of a reference to obtain the instant methods of use has not been found."

66.    On June 19, 2020, Taiho filed a supplemental IDS disclosing an office action dated May 28, 2020 from a related Taiwanese application.  Taiho also disclosed "'CENTER FOR DRUG EVALUATION AND RESEARCH,' CLINICAL PHARMACOLOGY NDA REVIEW," which is a section of the Lonsurf FDA Approval Package cited in the Taiwanese office action.  The Examiner considered these references on June 23, 2020.

67.    On August 12, 2020, Taiho filed a Request for Continued Examination and an additional Supplemental IDS, disclosing a number of references, including "'The Report on the Deliberation Results of Lonsurf,' PHARMACEUTICAL AND FOOD SAFETY BUREAU MINISTRY OF HEALTH, LABOUR AND WELFARE OF JAPAN," which the parties refer to as the "Lonsurf Report"; "'Guidance for Industry Pharmacokinetics in Patients with Impaired Renal Function - Study Design, Data Analysis, and Impact on Dosing and Labeling,' U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, May, 1998," which the parties refer to as the "FDA Guidance"; Mehvar (American Journal of Pharmaceutical Education, 2006, 70(5) Article 96); and Janus et al. (British Journal of Cancer, 2010, 103:1815-1821).  MSN asserts the Lonsurf Report and FDA Guidance as prior art against the Asserted Patents.  The Examiner considered these references on November 4, 2020.

68.    On December 2, 2020, the Examiner mailed a second Notice of Allowance, again stating that the allowed claims "are neither anticipated nor rendered obvious over the art of record," and that "[a] suggestion for modification of a reference to obtain the instant methods of use has not been found."

69.    On February 19, 2021, Taiho filed a supplemental IDS, disclosing a number of references, including an office action dated December 23, 2020 from a related New Zealand application and "CLINICAL TRIAL NCT02301117, 'A Phase I Study of TAS-102 in Patients

21

With Advanced Solid Tumors With Renal Impairment,'" also known as "NCT '117," and Lichtman et al. (European Journal of Cancer, 43, 3007, 14-34), both of which were cited in the New Zealand office action.  MSN asserts NCT '117 as prior art against the Asserted Patents. The Examiner considered these references on February 23, 2021.

70.    On March 2, 2021, Taiho paid the issue fee.  On March 10, 2021, an Issue Notification was mailed.

71.    The '004 Patent issued on March 30, 2021.