# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TAIHO PHARMACEUTICAL CO. LTD. and TAIHO ONCOLOGY, INC. <br><br> Plaintiffs, <br><br> v. <br><br> ACCORD HEALTHCARE INC., *et al.*, <br><br> Defendants. | C.A. No. 21-838-JLH <br> **CONSOLIDATED ANDA CASE** <br><br>  |

**EXHIBIT 4
PLAINTIFFS' STATEMENT OF THE ISSUES OF LAW**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     INFRINGEMENT........................................................................................ 3

     A.      Contested Issues of Law ................................................................... 3

          1.      Remedy ................................................................................... 3

III.    VALIDITY ................................................................................................. 3

     A.      Legal Standards for Patent Validity.................................................. 4

          1.      Clear and Convincing Evidence............................................. 4

          2.      Priority ................................................................................... 5

          3.      Person of Ordinary Skill in the Art........................................ 6

          4.      Prior Art ................................................................................. 9

          5.      Anticipation Under 35 U.S.C. §102 (AIA) ............................ 11

               a.      Overview................................................................... 11

               b.      Inherent Anticipation ............................................... 14

          6.      Obviousness Under 35 U.S.C. §103 (AIA).............................. 15

               a.      Overview................................................................... 15

               b.      Combining References or Modifying a Single
               Reference .................................................................. 19

                     i.      Motivation to Combine................................... 19

                     ii.     Teaching Away ................................................ 22

               c.      Reasonable Expectation of Success ............................ 23

               d.      Obvious to Try ......................................................... 27

               e.      Obviousness Cannot Rely on Hindsight ..................... 28

               f.      Objective Evidence of Nonobviousness ..................... 30

          7.      Written Description Under 35 U.S.C. §112............................. 37

     B.      Contested Issues of Law ................................................................... 43

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re '318 Patent Infringement Litig.*,
    583 F.3d 1317 (Fed. Cir. 2009)..................................................................................41

*Abbott Lab'ys. v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)..................................................................................20

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*,
    759 F.3d 1285 (Fed. Cir. 2014)..............................................................................38, 39

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)....................................................................................4

*Ajinomoto Co., Inc. v. Int'l Trade Comm'n*,
    932 F.3d 1342 (Fed. Cir. 2019)..................................................................................37

*Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*,
    745 F.3d 1180 (Fed. Cir. 2014)..................................................................................39

*Alcon Rsch., Ltd. v. Watson Lab'ys, Inc.*,
    2018 WL 1115090 (D. Del. Mar. 1, 2018) .................................................................23

*Allergan USA, Inc. v. MSN Lab'ys Private Ltd.*,
    111 F.4th 1358 (Fed. Cir. 2024) ............................................................................37, 38

*Allergan, Inc. v. Sandoz Inc.*,
    796 F.3d 1293 (Fed. Cir. 2015)..........................................................................16, 41, 43

*Am. Hosp. Supply Corp. v. Travenol Lab'ys., Inc.*,
    745 F.2d 1 (Fed. Cir. 1984) ..................................................................................15, 36

*Am-Pro Protective Agency, Inc. v. United States*,
    281 F.3d 1234 (Fed. Cir. 2002)....................................................................................4

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
    580 F.3d 1340 (Fed. Cir. 2009)..................................................................................24

*Amgen Inc. v. Sandoz Inc.*,
    66 F.4th 952 (Fed. Cir. 2023) .....................................................................................6

*Amkor Tech., Inc. v. Int'l Trade Comm'n*,
    692 F.3d 1250 (Fed. Cir. 2012)....................................................................................9

i

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    839 F.3d 1034 (Fed. Cir. 2016)..................................................................................32

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)..................................................................................22

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010)...............................................................37, 40, 41, 42

*Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*,
    119 F.3d 953 (Fed. Cir. 1997)....................................................................................33

*In re Arkley*,
    59 C.C.P.A. 804 (C.C.P.A. 1972) ..............................................................................11

*Astellas Pharma Inc. v. Lupin Ltd. Zydus Pharms. USA Inc.*,
    2024 U.S. Dist. LEXIS 196689 (D. Del. Oct. 30, 2024) .............................................7

*AstraZeneca AB v. Mylan Pharms. Inc.*,
    19 F.4th 1325 (Fed. Cir. 2021) ..................................................................................23

*AstraZeneca LP v. Apotex, Inc.*,
    633 F.3d 1042 (Fed. Cir. 2010)..................................................................................11

*Aventis Pharma S.A. v. Hospira, Inc.*,
    743 F. Supp. 2d 305 (D. Del. 2010)...........................................................................18

*Bayer Pharma AG v. Watson Lab'ys, Inc.*,
    183 F. Supp. 3d 538 (D. Del. 2016)...........................................................................37

*Best Med. Int'l, Inc. v. Elekta Inc.*,
    46 F.4th 1346 (Fed. Cir. 2022) ....................................................................................8

*Biogen Int'l GmbH v. Mylan Pharms. Inc.*,
    18 F.4th 1333 (Fed. Cir. 2021) .............................................................................38, 41

*Biogen Int'l GmbH v. Mylan Pharms. Inc.*,
    28 F.4th 1194 (Fed. Cir. 2022) ..................................................................................38

*BlephEx, LLC v. Myco Indus., Inc.*,
    24 F.4th 1391 (Fed. Cir. 2022) ..................................................................................12

*Blue Calypso, LLC v. Groupon, Inc.*,
    815 F.3d 1331 (Fed. Cir. 2016)................................................................................9, 12

*Boehringer Ingelheim Pharms., Inc. v. Hec Pharm Co., Ltd.*,
    2017 WL 11633325 (D.N.J. Jan. 5, 2017) ................................................................18

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001)...................................................................................15

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
    752 F.3d 967 (Fed. Cir. 2014)....................................................................................35

*Callaway Golf Co. v. Acushnet Co.*,
    576 F.3d 1331 (Fed. Cir. 2009)..................................................................................12

*Capon v. Eshhar*,
    418 F.3d 1349 (Fed. Cir. 2005)..................................................................................39

*Celgene Corp. v. Hetero Labs Ltd.*,
    2020 WL 3249117 (D.N.J. June 16, 2020) ................................................................18

*Cephalon, Inc. v. Watson Pharms., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013)............................................................................12, 13

*In re Chu*,
    66 F.3d 292 (Fed. Cir. 1995).....................................................................................35

*Circuit Check Inc. v. QXQ Inc.*,
    795 F.3d 1331 (Fed. Cir. 2015) .................................................................................33

*Connell v. Sears, Roebuck & Co.*,
    722 F.2d 1542 (Fed. Cir. 1983) .................................................................................11

*Corning Inc. v. SRU Biosystems*,
    400 F. Supp. 2d 653 (D. Del. 2005)...........................................................................20

*In re Cronyn*,
    890 F.2d 1158 (Fed. Cir. 1989) .................................................................................10

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
    807 F.2d 955 (Fed. Cir. 1986)....................................................................................31

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
    676 F.3d 1063 (Fed. Cir. 2012)........................................................................ *passim*

*Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*,
    501 F.3d 1254 (Fed. Cir. 2007)..............................................................................7, 8, 9

*Data Health Partners, Inc. v. Teladoc Health, Inc.*,
    734 F. Supp. 3d 315 (D. Del. 2024)..............................................................................5

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
    851 F.2d 1387 (Fed. Cir. 1988)..................................................................................31

iii

*In re Dembiczak*,
    175 F.3d 994 (Fed. Cir. 1999)..................................................................................28

*In re Deuel*,
    51 F.3d 1552 (Fed. Cir. 1995)..................................................................................23

*Dominion Dealer Sols., LLC v. AutoAlert, Inc.*,
    2014 WL 5035359 (P.T.A.B. Oct. 6, 2014) ...........................................................11

*In re Dow Chem. Co.*,
    837 F.2d 469 (Fed. Cir. 1988)..............................................................................29, 33

*Eisai Co. Ltd. v. Dr. Reddy's Lab'ys, Ltd.*,
    533 F.3d 1353 (Fed. Cir. 2008)................................................................................19

*Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Rsch.*,
    346 F.3d 1051 (Fed. Cir. 2003)................................................................................13

*Eli Lilly and Co. v. Actavis Elizabeth LLC*,
    435 F. App'x 917 (Fed. Cir. 2011) ..........................................................................25

*Eli Lilly and Co. v. Teva Pharms. Int'l GmbH*,
    8 F.4th 1331 (Fed Cir. 2021) .....................................................................17, 24, 26

*Eli Lilly and Co. v. Zenith Goldline Pharms., Inc.*,
    471 F.3d 1369 (Fed. Cir. 2006)................................................................................34

*Endo Pharms. Inc. v. Actavis Inc*,
    2017 WL 3731001 (D. Del. Aug. 30, 2017) .............................................................6

*Endo Pharms. Inc. v. Actavis LLC*,
    922 F.3d 1365 (Fed. Cir. 2019)................................................................................15

*Endo Pharms. Inc. v. Mylan Pharms. Inc.*,
    2014 WL 334178 (D. Del. Jan. 28, 2014)................................................................10

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
    2008 WL 11335094 (D. Del. Jan. 18, 2008) ..........................................................10

*In re Entresto*,
    125 F.4th 1090 (Fed. Cir. 2025) ..............................................................................37

*Env't Designs, Ltd. v. Union Oil Co.*,
    713 F.2d 693 (Fed. Cir. 1983) ...................................................................................7

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
    323 F.3d 956 (Fed. Cir. 2002)..................................................................................38

*Ex Parte Erlich*,
    22 U.S.P.Q.2d 1463 (B.P.A.I. 1992)........................................................................11

*Evans v. Eaton*,
    20 U.S. 356 (1822)...............................................................................................37

*Falko-Gunter Falkner v. Inglis*,
    448 F.3d 1357 (Fed. Cir. 2006)........................................................................40, 41

*In re Farrenkopf*,
    713 F.2d 714 (Fed. Cir. 1983)...............................................................................10

*Forest Lab'ys., Inc. v. Ivax Pharms., Inc.*,
    438 F. Supp. 2d 479 (D. Del. 2006)......................................................................36

*Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*,
    918 F.3d 928 (Fed. Cir. 2019)..............................................................................37

*Friskit, Inc. v. Real Networks, Inc.*,
    306 F. App'x 610 (Fed. Cir. 2009)........................................................................36

*Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*,
    799 F. App'x 838 (Fed. Cir. 2020) ...........................................................13, 14, 15

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) ...........................................................................28

*Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*,
    655 F.3d 1291 (Fed. Cir. 2011).............................................................................35

*Genzyme Corp. v. Dr. Reddy's Lab'ys., Ltd.*,
    2016 WL 2757689 (D. Del. May 11, 2016)...........................................................32

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004).............................................................................5

*Glaxo Inc. v. Novopharm Ltd.*,
    52 F.3d 1043 (Fed. Cir. 1995)..............................................................................14

*In re GPAC Inc.*,
    57 F.3d 1573 (Fed. Cir. 1995)...............................................................................7

*Graham v. John Deere Co. of Kan. City*,
    383 U.S. 1 (1966)................................................................................................15

*Grunenthal GmbH v. Alkem Lab'ys Ltd.*,
    919 F.3d 1333 (Fed. Cir. 2019).............................................................................27

*In re Gurley*,
    27 F.3d 551 (Fed. Cir. 1994)..............................................................22, 23

*In re Hall*,
    781 F.2d 897 (Fed. Cir. 1986) ...................................................................10

*Hansgirg v. Kemmer*,
    102 F.2d 212 (C.C.P.A. 1939) ...................................................................16

*In re Hedges*,
    783 F.2d 1038 (Fed. Cir. 1986)..................................................................29

*In re Hogan*,
    559 F.2d 595 (Fed. Cir. 1977).....................................................................10

*Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*,
    865 F.3d 1348 (Fed. Cir. 2017)..................................................................16

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986)..................................................................31

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011)..................................................................37

*Immunex Corp. v. Sandoz Inc.*,
    964 F.3d 1049 (Fed. Cir. 2020)..................................................................37

*Impax Lab'ys., Inc. v. Aventis Pharms., Inc.*,
    545 F.3d 1312 (Fed. Cir. 2008)....................................................................5

*Indivior Inc. v. Dr. Reddy's Lab'ys., S.A.*,
    930 F.3d 1325 (Fed. Cir. 2019).....................................................................7

*Innogenetics, N.V. v. Abbott Lab'ys.*,
    512 F.3d 1363 (Fed. Cir. 2008)..............................................................20, 21

*Inphi Corp. v. Netlist, Inc.*,
    805 F.3d 1350 (Fed. Cir. 2015)..................................................................42

*Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino*,
    738 F.3d 1337 (Fed. Cir. 2013)..............................................................21, 32

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
    821 F.3d 1359 (Fed. Cir. 2016)..................................................................24

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014)..........................................................19, 20, 29

*Jackson v. NuVasive, Inc.*,
  2023 WL 5175092 (D. Del. Aug. 11, 2023) ...................................................................6

*Janssen Pharmaceutica N.V. v. Mylan Pharms., Inc.*,
  456 F. Supp. 2d 644 (D.N.J. 2006) ..............................................................22, 34, 36

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
  141 F.4th 1367 (Fed. Cir. 2025) ...........................................................19, 21, 22, 25

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
  97 F.4th 915 (Fed. Cir. 2024) .....................................................................................17

*Janssen Pharms., Inc. v. Tolmar, Inc.*,
  718 F. Supp. 3d 394 (D. Del. 2024).............................................................................27

*Kao Corp. v. Unilever U.S., Inc.*,
  441 F.3d 963 (Fed. Cir. 2006)......................................................................................35

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
  780 F.3d 1376 (Fed. Cir. 2015) ...................................................................................12

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed. Cir. 2012).....................................................................................21

*In re Klopfenstein*,
  380 F.3d 1345 (Fed. Cir. 2004) ...................................................................................10

*Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*,
  367 F.3d 1381 (Fed. Cir. 2004)..............................................................................35, 36

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)..............................................................................7, 15, 27, 28, 29

*In re Kubin*,
  561 F.3d 1351 (Fed. Cir. 2009) ...................................................................................30

*Kyocera Wireless Corp. v. Int'l Trade Comm'n*,
  545 F.3d 1340 (Fed. Cir. 2008).......................................................................................9

*Application of Langer*,
  503 F.2d 1380 (C.C.P.A. 1974) ...................................................................................11

*Leo Pharm. Prods., Ltd. v. Rea*,
  726 F.3d 1346 (Fed. Cir. 2013)............................................24, 27, 30, 31, 34, 35, 36

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
  541 F. Supp. 3d 435 (D. Del. 2021)..............................................................................40

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*,
831 F. Supp. 1354 (N.D. Ill. 1993) ...................................................................34

*McCoy v. Heal Sys., LLC*,
850 F. App'x 785 (Fed. Cir. 2021) ....................................................................7

*Merck & Co. v. Teva Pharms. USA, Inc.*,
395 F.3d 1364 (Fed. Cir. 2005).........................................................................8

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017).......................................................................28

*MHL Custom, Inc. v. Waydoo USA, Inc.*,
2023 WL 5748755 (D. Del. Sept. 6, 2023)........................................................9

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011)..............................................................................................4

*Miles Lab'ys, Inc. v. Shandon Inc.*,
997 F.2d 870 (Fed. Cir. 1993)..........................................................................39

*Millennium Pharms., Inc. v. Sandoz Inc.*,
862 F.3d 1356 (Fed. Cir. 2017)......................................................16, 23, 30, 33, 35

*Minn. Mining and Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002) .......................................................................13

*Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
976 F.2d 1559 (Fed. Cir. 1992)........................................................................33

*Mintz v. Dietz & Watson, Inc.*,
679 F.3d 1372 (Fed. Cir. 2012).......................................................................28

*Nalpropion Pharms., Inc. v. Actavis Lab'ys FL, Inc.*,
934 F.3d 1344 (Fed. Cir. 2019)...................................................................38, 40

*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ......................................................................22

*Neptune Generics, LLC v. Eli Lilly & Co.*,
921 F.3d 1372 (Fed. Cir. 2019)........................................................................33

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008).......................................................................11

*Nidec Motor Corp. v. Zhongshan Bd. Ocean Motor Co. Ltd.*,
851 F.3d 1270 (Fed. Cir. 2017) ......................................................................13

*Novartis Pharms. Corp. v. Accord Healthcare, Inc.*,
   38 F.4th 1013 (Fed. Cir. 2022) ......................................................................39

*Novartis Pharms. Corp. v. Accord Healthcare Inc.*,
   387 F. Supp. 3d 429 (D. Del. 2019) ..............................................................18

*Novartis Pharms. Corp. v. Breckenridge Pharm., Inc.*,
   248 F. Supp. 3d 578 (D. Del. 2017).............................................................25

*Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*,
   287 F. Supp. 3d 505 (D. Del. 2017).............................................................30

*Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*,
   923 F.3d 1051 (Fed. Cir. 2019).............................................18, 19, 26, 39

*Novo Nordisk Pharms., Inc. v. Bio-Tech. Gen. Corp.*,
   424 F.3d 1347 (Fed. Cir. 2005).....................................................................13

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
   723 F.3d 1336 (Fed. Cir. 2013)..............................................................38, 39

*Nuvo Pharms. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys Inc.*,
   923 F.3d 1368 (Fed. Cir. 2019).....................................................................40

*In re Oelrich*,
   666 F.2d 578 (C.C.P.A. 1981) ......................................................................16

*Orexigen Therapeutics, Inc. v. Actavis Lab'ys. FL, Inc.*,
   282 F. Supp. 3d 793 (D. Del. 2017)...............................................................6

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys., Inc.*,
   348 F. Supp. 2d 713 (N.D. W. Va. 2004) ..................................................34

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*,
   520 F.3d 1358 (Fed. Cir. 2008).............................................19, 27, 28, 30, 31

*OrthoPediatrics Corp. v. Wishbone Med., Inc.*,
   2022 WL 4978169 (N.D. Ind. Oct. 4, 2022)..................................................8

*OSI Pharms., LLC v. Apotex Inc.*,
   939 F.3d 1375 (Fed. Cir. 2019).................................................................25, 26

*OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*,
   701 F.3d 698 (Fed. Cir. 2012)..........................................................................5

*Otonomy, Inc. v. Auris Med., AG*,
   743 F. App'x 430 (Fed. Cir. 2018) ..............................................................12

ix

*Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012)..................................................................24, 29

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
773 F.3d 1186 ...............................................................................................16

*Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*,
323 F. Supp. 3d 566 (D. Del. 2018)................................................................7

*Pfaff v. Wells Elecs., Inc.*,
525 U.S. 55 (1998)........................................................................................40

*Pfizer Inc. v. Mylan Pharms. Inc.*,
71 F. Supp. 3d 458 (D. Del. 2014)................................................................32

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007).....................................................................20

*Pharmacyclics LLC v. Alvogen Pine Brook LLC*,
556 F. Supp. 3d 377 (D. Del. 2021).................................................22, 24, 41

*Phigenix, Inc. v. Genentech Inc.*,
2016 WL 4172202 (N.D. Cal. Aug. 8, 2016) ...............................................18

*Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*,
315 F.3d 1335 (Fed. Cir. 2003).....................................................................10

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018).....................................................................32

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004).....................................................................11

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993).......................................................................4

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
411 F.3d 1332 (Fed. Cir. 2005).....................................................................29

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.*,
566 F.3d 989 (Fed. Cir. 2009).........................................................16, 19, 34

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013).......................................................................7

*Rapoport v. Dement*,
254 F.3d 1053 (Fed. Cir. 2001).....................................................................14

*Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*,
  127 F.4th 896 (Fed. Cir. 2025) .......................................................................................38

*Regents of Univ. of Cal. v. Broad Inst., Inc.*,
  903 F.3d 1286 (Fed. Cir. 2018).......................................................................................19

*Reiffin v. Microsoft Corp.*,
  214 F.3d 1342 (Fed. Cir. 2000).......................................................................................42

*In re Robertson*,
  169 F.3d 743 (Fed. Cir. 1999) ........................................................................................14

*In re Rouffet*,
  149 F.3d 1350 (Fed. Cir. 1998)....................................................................................6, 29

*Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*,
  108 F.4th 1376 (Fed. Cir. 2024) ......................................................................................9

*Sanofi v. Glenmark Pharms. Inc. USA*,
  204 F. Supp. 3d 665 (D. Del. 2016)...........................................................................28, 35

*Sanofi v. Watson Lab'ys Inc.*,
  875 F.3d 636 (Fed. Cir. 2017).........................................................................................26

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*,
  2023 WL 4175334 (D. Del. June 26, 2023)..................................................................25, 26

*Sanofi-Synthelabo v. Apotex, Inc.*,
  550 F.3d 1075 (Fed. Cir. 2008).......................................................................................29

*Scaltech, Inc. v. Retec/Tetra, L.L.C.*,
  178 F.3d 1378 (Fed. Cir. 1999).......................................................................................14

*Schering Corp. v. Geneva Pharms., Inc.*,
  339 F.3d 1373 (Fed. Cir. 2003).......................................................................................14

*Shire LLC v. Amneal Pharms., LLC*,
  802 F.3d 1301 (Fed. Cir. 2015).........................................................................................5

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
  607 F.3d 784 (Fed. Cir. 2010).........................................................................................11

*In re Soni*,
  54 F.3d 746 (Fed. Cir. 1995).....................................................................................35, 36

*Specialty Composites v. Cabot Corp.*,
  845 F.2d 981 (Fed. Cir. 1988).........................................................................................36

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336 (Fed. Cir. 2011)......................................................................23

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   655 F.3d 1364 (Fed. Cir. 2011)......................................................................29

*In re Stepan Co.*,
   868 F.3d 1342 (Fed. Cir. 2017)..................................................................23, 25

*Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*,
   665 F.3d 1269 (Fed. Cir. 2012)......................................................................40

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
   726 F.2d 724 (Fed. Cir. 1984)........................................................................14

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
   492 F.3d 1350 (Fed. Cir. 2007)......................................................................19

*Takeda Pharm. Co., Ltd. v. Impax Lab'ys, Inc.*,
   2013 WL 2384240 (N.D. Cal. May 30, 2013).................................................41

*Takeda Pharm. Co., Ltd. v. Mylan Inc.*,
   2014 WL 5862134 (N.D. Cal. Nov. 11, 2014) ..................................................8

*Tech. Licensing Corp. v. Videotek, Inc.*,
   545 F.3d 1316 (Fed. Cir. 2008)........................................................................6

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*,
   8 F.4th 1349 (Fed. Cir. 2021) ........................................................................32

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
   18 F.4th 1377 (Fed. Cir. 2021) ......................................................................26

*Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*,
   988 F.2d 1165 (Fed. Cir. 1993)......................................................................34

*The Rsch. Found. of State Univ. of N.Y. v. Mylan Pharms. Inc.*,
   723 F. Supp. 2d 638 (D. Del. 2010)................................................................32

*Thomas & Betts Corp. v. Litton Sys., Inc.*,
   720 F.2d 1572 (Fed. Cir. 1983)......................................................................10

*Tobinick v. Olmarker*,
   753 F.3d 1220 (Fed. Cir. 2014)......................................................................40

*Toyota Motor Corp. v. Reactive Surfaces Ltd., LLP*,
   816 F. App'x 480 (Fed. Cir. 2020) .................................................................16

*Trintec Indus., Inc. v. Top-U.S.A. Corp.,*
  295 F.3d 1292 (Fed. Cir. 2002)..............................................................................14

*UCB, Inc. v. Watson Lab'ys Inc.,*
  927 F.3d 1272 (Fed. Cir. 2019)..............................................................................16

*Unigene Lab'ys, Inc. v. Apotex, Inc.,*
  655 F.3d 1352 (Fed. Cir. 2011)..............................................................................27

*Uniroyal, Inc. v. Rudkin-Wiley Corp.,*
  837 F.2d 1044 (Fed. Cir. 1988) .............................................................................29

*United Therapeutics Corp. v. Liquidia Techs., Inc.,*
  74 F.4th 1360 (Fed. Cir. 2023) .......................................................................17, 42

*University Of Rochester v. G.D. Searle & Co., Inc.,*
  358 F.3d 916 (Fed. Cir. 2004)................................................................................39

*In re Vaidyanathan,*
  381 F. App'x 985 (Fed. Cir. 2010) ........................................................................20

*Vas-Cath Inc. v. Mahurkar,*
  935 F.2d 1555 (Fed. Cir. 1991) .............................................................................37

*Verizon Servs. Corp. v. Cox Fibernet Va., Inc.,*
  602 F.3d 1325 (Fed. Cir. 2010)..............................................................................14

*Vulcan Eng'g Co. Inc. v. Fata Aluminium, Inc.,*
  278 F.3d 1366 (Fed. Cir. 2002)..............................................................................33

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.,*
  721 F.2d 1540 (Fed. Cir. 1983)..............................................................................29

*In re Wands,*
  858 F.2d 731 (Fed. Cir. 1988)................................................................................14

*WBIP, LLC v. Kohler Co.,*
  829 F.3d 1317 (Fed. Cir. 2016).........................................................32, 33, 34, 36

*In re Wesslau,*
  353 F.2d 238 (C.C.P.A. 1965) ...............................................................................29

*White Consol. Indus., Inc. v. Vega Servo-Control, Inc.,*
  713 F.2d 788 (Fed. Cir. 1983) ...............................................................................13

*William Wesley Carnes, Sr., Inc. v. Seaboard Int'l Inc.,*
  2019 WL 2041926 (P.T.A.B. May 8, 2019) .........................................................21

*Application of Wilson*,
   311 F.2d 266 (C.C.P.A. 1962) ...............................................................................11

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
   782 F.2d 995 (Fed. Cir. 1986)................................................................................36

*In re Wyer*,
   655 F.2d 221 (C.C.P.A. 1981) ...............................................................................10

*Wyeth LLC v. AstraZeneca Pharms. LP*,
   2024 WL 3665801 (D. Del. Aug. 6, 2024) .............................................................17

*In re Xencor, Inc.*,
   130 F.4th 1350 (Fed. Cir. 2025) ............................................................................18

*Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*,
   231 F.3d 1339 (Fed. Cir. 2000)........................................................................19, 29

*Yeda Rsch. v. Mylan Pharms. Inc.*,
   906 F.3d 1031 (Fed. Cir. 2018)..............................................................................11

*Zoltek Corp. v. United States*,
   815 F.3d 1302 (Fed. Cir. 2016)..............................................................................39

**Statutes**

35 U.S.C. §102.........................................................................................................11, 43

35 U.S.C. § 102(a) .........................................................................................................9

35 U.S.C. § 102(a)(1)......................................................................................................9

35 U.S.C. §103.............................................................................15, 29, 30, 35, 43

35 U.S.C. § 103(a) ........................................................................................................15

35 U.S.C. §112..........................................................................................5, 37, 39, 43

35 U.S.C. § 120.............................................................................................................5

35 U.S.C. § 271.............................................................................................................3

35 U.S.C. § 271(e)(4)(A) ..............................................................................................3

35 U.S.C. § 271(e)(4)(B) ..............................................................................................3

35 U.S.C. § 282.........................................................................................................4, 5

35 U.S.C. § 283.............................................................................................................3

xiv

## I.    INTRODUCTION

Pursuant to Local Rule 16.3(c)(5), Plaintiffs Taiho Pharmaceutical Co., Ltd. and Taiho Oncology, Inc. (collectively, "Taiho" or "Plaintiffs") respectfully submit the following responsive statement of the issues of law which remain to be litigated in this case.  Defendants MSN Laboratories Private Ltd. and MSN Pharmaceuticals Inc. (collectively, "MSN" or "Defendants") have stipulated to infringement of claims 1-4, 7, 17, 18, 20, 24 and 28 of U.S. Patent No. 10,960,004 and claim 10 of U.S. Patent No. 10,456,399 (collectively, "Asserted Claims").  ECF No. 99 ¶ 1.  MSN sets forth its Statements of Issues of Law for which it bears the burden of proof in Exhibit 5.  Taiho does not agree with those Statements of Issues of Law and thus has provided herein a responsive statement of the issues of law in this case.  Taiho does so without prejudice and without changing the burden of proof, which remains with Defendants.  As such, the below issues of law focus largely on the issues related to validity.  *See* Section II.

The only issues that are contested in this case relate to the validity of the Asserted Claims: (1) written description, (2) anticipation, and (3) obviousness.  The legal standards for each of these issues are discussed below, Sections III.A.5–III.A.7, and demonstrate that the Asserted Claims are not invalid for lack of written description, anticipation, or obviousness.

The Asserted Claims are assumed valid and MSN must overcome that presumption by clear and convincing evidence.  Section III.A.1.  The validity of a patent is assessed through the eyes of a POSA, who can be a member of team or rely on other experts.  Section III.A.3.  The type of claim at issue does not dictate who can qualify as a POSA and the inventor's background can inform the level of skill in the art. *Id.*  Further, as the below issues of law will demonstrate, none of the Asserted Claims recite safety and efficacy elements; nor does a method of treatment claim automatically require a certain level of safety or efficacy.  Section III.A.6.

1

The Asserted Claims are not anticipated by the prior art as anticipation cannot be found where every element of the claimed invention is not described in a single reference.  Section III.A.5.  Every asserted claim requires treating SRI patients, but no reference cited by MSN discloses having done so.

MSN also asserts that the Asserted Claims are either obvious or invalid for written description.  *See* Pretrial Order, Ex. 5.  In doing so, MSN asserts that an invention cannot have adequate written description and be found nonobvious.  Expert Report of Dr. Robert Dreicer, dated May 23, 2025 at 60.  Obviousness and written description are not inversely related, though.  *See* Sections III.A.6–III.A.7.  Inventions are frequently nonobvious over the prior art, but also described in the specification.  *Id.* What determines whether a claimed invention lacks written description is the extent of disclosure included in the specification.  Section III.A.7.  In assessing written description, there does not need to be an actual reduction to practice, or in the case of method of treatment claims, any test results.  *Id.* In this instance, the Asserted Claims are valid as they are not rendered obvious, are not anticipated, and have sufficient written description.

Taiho's responsive statement is based upon the current status of the case and the Court's current rulings, and Taiho reserves the right to supplement or revise this responsive statement in response to Defendants pretrial activities, any subsequent discovery, or any further decisions or orders of the Court.  The citation of authorities contained herein is not intended to be exhaustive, but instead illustrative of the legal issues that will be litigated at the upcoming trial.  Taiho reserves the right to rely on additional authorities in support of its claims, defenses, and intended proofs.  Taiho also reserves the right to address additional issues not set forth herein to the extent they are raised by Defendants at trial.

To the extent that Taiho's statement of the issues of fact that remain to be litigated (Exhibit 2) contains issues of law, those issues are incorporated herein by reference. Likewise, should the Court determine that any issue identified in this Exhibit is more appropriately considered an issue of fact, Taiho incorporates such issue by reference into Exhibit 2.

## II.    INFRINGEMENT

### A.    <u>Contested Issues of Law</u>

#### 1.    Remedy

1.    Whether Plaintiffs are entitled to an order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 214024 ("Defendants' ANDA") shall be no earlier than the day after the expiration of U.S. Patent Nos. 10,960,004 and 10,456,399 ("Asserted Patents"), including any extensions and associated exclusivities.

2.    Whether Plaintiffs are entitled to a permanent injunction under 35 U.S.C. § 271(e)(4)(B) and/or 35 U.S.C. § 283, enjoining Defendants, each of their officers, agents, employees, parents, affiliates, and subsidiaries, and all persons in active concert or participation with them, from commercially manufacturing, selling or offering for sale, using, or importing Defendants' ANDA Product or otherwise infringing the Asserted Patents until the day after the expiration of the Asserted Patents, including any extensions and exclusivities pursuant to 35 U.S.C. § 271 and 35 U.S.C. § 283.

## III.    VALIDITY

3.    Plaintiffs do not have the burden of proof regarding Defendants' affirmative defenses and counterclaims that the Asserted Claims are invalid. Defendants alone must prove their affirmative defenses and counterclaims by clear and convincing evidence.

4.    These legal issues are based on Plaintiffs' current understanding of the arguments that Defendants are likely to advance in this case.

3

5.      Should the Court determine that any issue identified in these legal issues is more properly considered an issue of fact, it shall be so considered.  Plaintiffs reserve the right to revise these legal issues in light of the Court's rulings, Defendants' statement of issues to be litigated, and as warranted by further developments in this case.

### A. Legal Standards for Patent Validity

6.      The Asserted Claims are presumed to be valid, and the burden of proving invalidity of each claim rests with MSN.

### 1. Clear and Convincing Evidence

7.      Defendants face a heavy burden in challenging a patent's validity.  Issued patents are "presumed valid" (35 U.S.C. § 282), and defendants must overcome that presumption by clear and convincing evidence.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012).

8.      Under the clear and convincing evidence standard, a party alleging invalidity must create "in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'" *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (quotations omitted).  The clear and convincing standard requires "well-nigh irrefragable" proof, which is "evidence that 'cannot be refuted or disproved; incontrovertible, incontestable, indisputable, irrefutable, undeniable.'" *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1239–40 (Fed. Cir. 2002) (quoting Oxford English Dictionary 93 (2d ed. 1991)).

9.      While applicable in all circumstances, the clear and convincing standard applies "even more clearly" where the U.S. Patent & Trademark Office ("USPTO") previously considered the evidence in question.  *See Microsoft*, 564 U.S. at 109.  Thus, where invalidity is asserted on

4

the basis of a reference or references considered by the USPTO during prosecution of the patent, it is "especially difficult" to overcome the presumption of validity. *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004); *Impax Lab'ys., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("When the examiner considered the asserted prior art and basis for the validity challenge during patent prosecution, [the clear and convincing evidence] burden becomes particularly heavy."); *see also OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 704–05 (Fed. Cir. 2012). The party alleging invalidity must overcome "the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents." *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (internal citations omitted); *Data Health Partners, Inc. v. Teladoc Health, Inc.*, 734 F. Supp. 3d 315, 327 (D. Del. 2024) ("Deference to a patent examiner's decision to allow claims is incorporated into the presumption of patent validity under 35 U.S.C. § 282.").

10. The presumption of validity and corresponding burden of proof in overcoming that presumption applies to each patent claim independently. 35 U.S.C. § 282.

## 2. Priority

11. A patentee is entitled to a priority date that is earlier than the filing date of the patent application when, inter alia, a previous application disclosed the invention in compliance with § 112. See 35 U.S.C. § 120 ("An application for patent for an invention disclosed in the manner provided by section 112(a) . . . in an application previously filed in the United States . . . shall have the same effect, as to such invention, as though filed on the date of the prior application ").

12. Where a challenger asserts prior art that was published before the filing date of a nonprovisional patent application, the patentee bears the burden of production that it is entitled to

5

the earlier priority date. *See Jackson v. NuVasive, Inc.*, 2023 WL 5175092, at *6 (D. Del. Aug. 11, 2023) *adopted by* 2023 WL 6387866 (D. Del. Sept. 29, 2023) ("The patentee bears the burden of establishing that the claimed invention is entitled to an earlier priority date than an asserted prior art reference."); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008); *see Orexigen Therapeutics, Inc. v. Actavis Lab'ys. FL, Inc.*, 282 F. Supp. 3d 793, 805 (D. Del. 2017) (noting in dicta that "the burden of establishing entitlement to the priority date of a provisional application rests with the party claiming priority"), *aff'd in part, rev'd in part on other grounds sub nom. Nalpropion Pharms., Inc. v. Actavis Lab'ys FL, Inc.*, 934 F.3d 1344 (Fed. Cir. 2019).

13. Having the burden of production means "going forward with evidence," defined as "producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Tech. Licensing*, 545 F.3d at 1327; *see also Amgen Inc. v. Sandoz Inc.*, 66 F.4th 952, 958, 966 (Fed. Cir. 2023) (finding that the patentee had met its burden of production to show that the patent-in-suit was entitled to its earliest priority date).

14. "Once [the patentee] meets [its] burden of production, the burden shifts back to Defendants to prove by clear and convincing evidence that [the patentee is] not entitled to the earlier date." *Endo Pharms. Inc. v. Actavis Inc*, 2017 WL 3731001, at *4 (D. Del. Aug. 30, 2017).

15. The ultimate burden of persuasion—and the "risk of decisional uncertainty"—remains with the patent challenger as to whether the patent is invalid as obvious or anticipated. *See Tech. Licensing*, 545 F.3d at 1327.

### 3. Person of Ordinary Skill in the Art

16. A patent and its prior art are viewed through the eyes of a POSA at the time the invention was made. *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998). The POSA is a "legal construct"—a hypothetical person who is presumed to know "all prior art references in the field of the invention." *Id.* "A person of ordinary skill is also a person of ordinary creativity, not an

6

automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007); *see also Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) (requiring that the assessment of obviousness take into account "'demands known to the design community,' 'the background knowledge possessed by a person having ordinary skill in the art,' and 'the inferences and creative steps that a person of ordinary skill in the art would employ.'" (quoting *KSR*, 550 U.S. at 418)).

17.     "Factors that may be considered in determining level of ordinary skill in the art include: (1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field." *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (quoting *Env't Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 696 (Fed. Cir. 1983)). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Id.* In a given case, "every factor may not be present, and one or more factors may predominate." *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995).

18.     A POSA may rely on other experts. *McCoy v. Heal Sys., LLC*, 850 F. App'x 785, 788 (Fed. Cir. 2021). A POSA could also "be a member of a team." *Indivior Inc. v. Dr. Reddy's Lab'ys., S.A.*, 930 F.3d 1325, 1352 (Fed. Cir. 2019); *Astellas Pharma Inc. v. Lupin Ltd. Zydus Pharms. USA Inc.*, 2024 U.S. Dist. LEXIS 196689, at *16 (D. Del. Oct. 30, 2024) (defining a POSA as a multi-disciplinary team, noting that "understanding the scope of the patent includes both a pharmacokinetic and clinical dimension," and "[t]herefore, it is best understood by a multidisciplinary team that understands both the science of drug absorption and the clinical context for the problem"); *Pernix Ireland Pain DAC v. Alvogen Malta Operations Ltd.*, 323 F. Supp. 3d 566, 576, 597 (D. Del. 2018), *aff'd sub nom. Persion Pharms. LLC v. Alvogen Malta Operations*

7

*Ltd.*, 945 F.3d 1184 (Fed. Cir. 2019) (defining a POSA for method of treatment patents for patients with hepatic impairment to be a "person or team of persons with a degree or degrees in the relevant fields such as chemistry, biology, pharmaceutics, or medicine, and work experience in formulating or administering pharmaceuticals"); *Takeda Pharm. Co., Ltd. v. Mylan Inc.*, 2014 WL 5862134, at *16 (N.D. Cal. Nov. 11, 2014) ("A person of ordinary skill in the relevant art of the '064 patent, as of the relevant date, would likely have been part of, or ha[ve] access to, a team of individuals with various skills spanning the chemical arts listed above.") (citations omitted).

19.     Where method of treatment claims exist, the POSA is not automatically assumed to be a clinician. *Daiichi*, 501 F.3d at 1257 (finding that a POSA would have pharmaceutical formulation or clinical experience where the patents at issue discussed methods of treatment using a topic ear infection compound and the specification discussed the animal testing of this compound in detail); *Takeda*, 2014 WL 5862134, at *5–7 (finding that a POSA would have both experience in pharmaceutical formulation and in clinical treatment of gastrointestinal disorders where the patents at issue discussed methods of treatment and formulation); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005) (finding where the patent concerned the prevention and treatment of osteoporosis that a POSA did not have to have formal training in pharmacology, but could be someone "working in the field of, or doing research on, osteoporosis").

20.     The inventor's background can inform the level of skill in the art. *See Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1355 n. 9 (Fed. Cir. 2022) (finding that the PTAB's POSA definition was supported by the inventor's deposition testimony); *OrthoPediatrics Corp. v. Wishbone Med., Inc.*, 2022 WL 4978169, at *5 (N.D. Ind. Oct. 4, 2022) (selecting the plaintiff's POSA definition over defendant's where the inventors would not qualify under the defendant's

proposed narrow definition); *Daiichi*, 501 F.3d at 1257 (using the inventor's educational and experiential backgrounds in assessing the relevant level of skill in the art).

### 4. Prior Art

21. Defendants bear the burden of proving that their asserted invalidity references are prior art. *See, e.g., Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250, 1258 (Fed. Cir. 2012). To qualify as prior art, a reference must have been patented, published, in public use, on sale, or otherwise publicly available before the "effective filing date of the claimed invention." 35 U.S.C. § 102(a) (AIA); *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376, 1380 (Fed. Cir. 2024) (quoting 35 U.S.C. § 102(a)) ("Under the AIA, whether a reference is prior art is determined based on 'the effective filing date of the claimed invention,' rather than the date of the invention.").

22. It is the patent challenger's burden to present sufficient evidence to establish that the reference was publicly accessible, under 35 U.S.C. § 102(a)(1), before the priority date of the patent. *MHL Custom, Inc. v. Waydoo USA, Inc.*, 2023 WL 5748755, at *3 (D. Del. Sept. 6, 2023) (defendant "did not meet its heavy evidentiary burden to show [reference] was publicly accessible." (applying post-AIA law)); *see also Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008).

23. Whether a document is a "printed publication" that qualifies as prior art is determined by the "public accessibility" of the document. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016). The public accessibility of a document is the "touchstone in determining whether a reference constitutes a printed publication." *Kyocera*, 545 F.3d at 1350 (internal citations omitted). A document is publicly accessible if it was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence[] can locate it." *Id.*

9

24.    To determine whether a reference is publicly available, several factors must be considered:

> (1) distribution or dissemination; (2) records accessible to the public; (3) indexing and cataloging in a meaningful way; (4) duration of the display; (5) expertise of the intended audience; (6) expectations regarding the copying of the information displayed; and (7) ease or simplicity with which a display could be copied.
>
> *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 2008 WL 11335094, at *1 (D. Del. Jan. 18, 2008) (citations omitted) (citing *In re Klopfenstein*, 380 F.3d 1345, 1350–51 (Fed. Cir. 2004); *In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989); *In re Hall*, 781 F.2d 897, 898–900 (Fed. Cir. 1986); *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)).

25.    While not prior art, the Federal Circuit "has approved use of later publications as evidence of the state of art existing on the filing date of an application." *In re Hogan*, 559 F.2d 595, 605 (Fed. Cir. 1977); *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1344 (Fed. Cir. 2003) (relying on *Hogan* to find that the district court properly relied on post-priority art as evidence of the state of the art at the time of invention in an enablement analysis); *Endo Pharms. Inc. v. Mylan Pharms. Inc.*, 2014 WL 334178, at *19 n. 41 (D. Del. Jan. 28, 2014), *motion for relief from judgment granted*, 2014 WL 2532179 (D. Del. June 2, 2014) ("Although this publication was printed long after the priority date, the Court may properly rely upon this article as describing the state of the art as of the priority date."); *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1581 (Fed. Cir. 1983) (explaining that references "though not technically prior art, were, in effect, properly used as indicators of the level of ordinary skill in the art to which the invention pertained"); *In re Farrenkopf*, 713 F.2d 714, 720 (Fed. Cir. 1983).

26.    "[N]on-prior art evidence of what was known 'cannot be applied, independently, as teachings separately combinable' with other prior art, but 'can be relied on for their proper supporting roles, e.g., indicating the level of ordinary skill in the art, what certain terms would mean to one with ordinary skill in the art, and how one with ordinary skill in the art would have

10

understood a prior art disclosure." *Yeda Rsch. v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1041–42 (Fed. Cir. 2018) (quoting *Dominion Dealer Sols., LLC v. AutoAlert, Inc.*, 2014 WL 5035359, at *5 (P.T.A.B. Oct. 6, 2014)); *Ex Parte Erlich*, 22 U.S.P.Q.2d 1463 at *3 (B.P.A.I. 1992); *Application of Langer*, 503 F.2d 1380, 1391 (C.C.P.A. 1974) (allowing the PTAB to rely on post-priority references where they were cited to demonstrate a fact); *Application of Wilson*, 311 F.2d 266, 268–69 (C.C.P.A. 1962) (allowing a citation to a post-priority application to show a fact (*i.e.*, "The structure of urethane foams is such that most of the cells are interconnecting. Tests indicate that less than 5% of the cells are closed.  Foams with predominantly closed cells can be made by proper modification of the foaming formula.")).

### 5.    Anticipation Under 35 U.S.C. §102 (AIA)

#### a.  *Overview*

27.    "To show that a patent claim is invalid as anticipated, the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention." *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010); *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1055 (Fed. Cir. 2010) ("[A]nticipation is a question of fact that must be established at trial by clear and convincing evidence.") (citation omitted).  The anticipation inquiry is two steps: 1) the court construes the claims, and 2) the factfinder compares the construed claims against the prior art. *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004).

28.    "[T]he hallmark of anticipation is prior invention, the prior art reference !— in order to anticipate under 35 U.S.C. § 102 !— must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983)); *In re Arkley*, 59 C.C.P.A. 804, 807

11

(C.C.P.A. 1972) (stating that for a finding of anticipation to be proper the "reference must clearly and unequivocally disclose the claimed compound or direct those skilled in the art to the compound without *any* need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference" as "[s]uch picking and choosing … has no place in the making of a 102, anticipation rejection") (emphasis in original); *Otonomy, Inc. v. Auris Med., AG*, 743 F. App'x 430, 438-39 (Fed. Cir. 2018) ("While [the prior art] points to multiple, distinct teachings within the [asserted patent], it does not identify guidance in the disclosure to link them together.").

29.     "[A] reference can anticipate a claim even if it 'd[oes] not expressly spell out' all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would 'at once envisage' the claimed arrangement or combination." *Blue Calypso*, 815 F.3d at 1341 (quoting *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015)).  However, this principle does not apply where the level of skill in the art is high and there is no evidentiary support provided by the party asserting invalidity.  *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1401 (Fed. Cir. 2022) (declining to apply *Blue Calypso* where the patent challenger "offers nothing other than attorney argument as to what the highly skilled artisan would do" as "a substantial question of validity cannot be manufactured through mere supposition about what an artisan with highly advanced skill in the medical field might do").

30.     Every element of the claimed invention must be described in a single reference, "either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (citation omitted); *see also Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1339 (Fed. Cir. 2013) ("This court has held that experimentation was unreasonable, for

example, where it was found that eighteen months to two years' work was required to practice the patented invention."). The knowledge of a person of ordinary skill in the art cannot be used to supply missing claim limitations when evaluating anticipation. *See Galderma Lab'ys, L.P. v. Teva Pharms. USA, Inc.*, 799 F. App'x 838, 845 (Fed. Cir. 2020) ("[T]he district court was not permitted 'to fill in missing limitations simply because a skilled artisan would immediately envision them.'") (quoting *Nidec Motor Corp. v. Zhongshan Bd. Ocean Motor Co. Ltd.*, 851 F.3d 1270, 1274-75 (Fed. Cir. 2017)).

31.    "[T]he reference must enable that which it is asserted to anticipate" to serve as an anticipating reference. *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 346 F.3d 1051, 1054 (Fed. Cir. 2003). "Enablement requires that 'the prior art reference must teach one of ordinary skill in the art to make or carry out the claimed invention without undue experimentation.'" *Id.* (quoting *Minn. Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)); *see also Cephalon*, 707 F.3d at 1339 ("This court has held that experimentation was unreasonable, for example, where it was found that eighteen months to two years' work was required to practice the patented invention.") (citing *White Consol. Indus., Inc. v. Vega Servo-Control, Inc.*, 713 F.2d 788, 791 (Fed. Cir. 1983)). To the extent that a POSA's "knowledge of the art" is relevant to the enablement inquiry, the relevant knowledge is what "would have been understood by one of ordinary skill in the art at the time of [the prior art's] publication"—not the patent's priority date. *Novo Nordisk Pharms., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1356 (Fed. Cir. 2005).

32.    A number of factors are considered in determining whether experimentation is undue, including "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the

invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

### b.  Inherent Anticipation

33.    "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1337 (Fed. Cir. 2010). "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the prior art." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (quoting *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999)).

34.    The undisclosed feature must "necessarily and inevitably" flow from practice of what is disclosed.  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1378 (Fed. Cir. 2003). "Inherency may not be established by probabilities or possibilities." *Scaltech, Inc. v. Retec/Tetra, L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999).  "The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *Rapoport v. Dement*, 254 F.3d 1053, 1057 (Fed. Cir. 2001) (quoting *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1269 (Fed. Cir. 1991)) (emphasis in original).  Therefore, if the teachings of the prior art can be practiced in a way that yields a product lacking the allegedly inherent property, the prior art in question does not inherently anticipate.  *See Glaxo Inc. v. Novopharm Ltd.*, 52 F.3d 1043, 1047– 48 (Fed. Cir. 1995) (finding no inherent anticipation where testing evidence demonstrated that the prior art example could yield crystals of either the claimed polymorph or a different polymorph).

35.    Other references than the anticipatory reference may be relied on to determine whether the anticipatory reference is enabling to those skilled in the art, but these other references cannot be used for "specific teaching[s]." *Galderma*, 799 F. App'x at 843-44; *Studiengesellschaft*

14

*Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 727 (Fed. Cir. 1984); *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1380 (Fed. Cir. 2001) (refusing to turn to other references to assess enablement of the anticipatory reference where the anticipatory reference failed to disclose the claimed subject matter in the first instance).

36.    Further, the Federal Circuit has "previously rejected the proposition that 'a reference missing a limitation can anticipate a claim if a skilled artisan viewing the reference would 'at once envisage' the missing limitation.'" *Galderma*, 799 F. App'x at 845.

### 6.    Obviousness Under 35 U.S.C. §103 (AIA)

#### a.    Overview

37.    Under 35 U.S.C. § 103, a claim is invalid for obviousness only "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103 (AIA).

38.    Obviousness is a question of law based on underlying factual findings concerning: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the art; and (4) any secondary considerations (i.e., objective evidence of non-obviousness). *KSR*, 550 U.S. at 406; *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17-18 (1966); *Endo Pharms. Inc. v. Actavis LLC*, 922 F.3d 1365, 1372–373 (Fed. Cir. 2019). Defendant has the burden of proof with respect to all of the *Graham* factors. *Am. Hosp. Supply Corp. v. Travenol Lab'ys., Inc.*, 745 F.2d 1, 6-8 (Fed. Cir. 1984).

39.    Obviousness is determined from the perspective of the person of ordinary skill in the art ("POSA") at the time of the invention. 35 U.S.C. § 103(a); *see also KSR*, 550 U.S. at 420 ("The question is not whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art.").

40.    The challenger must show that the prior art teaches all elements of the invention, or obviousness will not be established. *UCB, Inc. v. Watson Lab'ys Inc.*, 927 F.3d 1272, 1287-90 (Fed. Cir. 2019) (upholding determination of non-obviousness).    The patent challenger must demonstrate that the claimed element was necessarily present in the prior art or that a POSA would have understood it to be disclosed. *See Allergan, Inc. v. Sandoz Inc.*, 796 F.3d 1293, 1307 (Fed. Cir. 2015); *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1367 (Fed. Cir. 2017); *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1355 (Fed. Cir. 2017).

41.    The "necessarily present" standard "is an exacting standard which cannot be met by a showing of 'probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient.'" *Toyota Motor Corp. v. Reactive Surfaces Ltd., LLP*, 816 F. App'x 480, 484 (Fed. Cir. 2020) (quoting *Hansgirg v. Kemmer*, 102 F.2d 212, 213 (C.C.P.A. 1939)); *see also PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196 ("Inherency, however, may not be established by probabilities or possibilities.  The mere fact that a certain thing may result from a given set of circumstances is not sufficient.") (quoting *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981)).

42.    "Generally, a party seeking to invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine*, 676 F.3d at 1068-69 (internal quotation marks omitted); *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009).

16

43.    In construing method of treatment claims, courts have found that they do not require a certain level of safety and efficacy.  *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1368-69  (Fed. Cir. 2023), *cert. denied,* 144 S. Ct. 873 (2024) (finding where the method of treatment claim was for "treating pulmonary hypertension comprising administering . . . a therapeutically effective single event dose of a formulation comprising treprostinil," "treating pulmonary hypertension" did not import any additional efficacy or safety limitations and that absent any incorporation of safety or efficacy limitations in the claims, defendant's arguments regarding the questionable safety and efficacy of the invention in treating certain patients were not for the court to decide, but were for the FDA); *see also id.* at 1369 ("We decline to insert the FDA's responsibilities into claims by importing requirements where they do not recite such limitations."); *see also id.*  ("Questions of safety and efficacy in patent law have long fallen under the purview of the FDA."); *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 97 F.4th 915, 919-20, 928–29 (Fed. Cir. 2024) (citing, *United Therapeutics*, 74 F.4th at 1369, when refusing to exclude a prior art reference that lacked safety and efficacy data merely because the claims at issue, related to a dosing regimen for patients with and without renal impairment, lacked a safety and efficacy requirement) ("[A]bsence of such safety and efficacy data in the '548 Protocol cannot justify simply discarding that prior art particularly where, as here, the claims do not have any safety and efficacy requirement."); *Wyeth LLC v. AstraZeneca Pharms. LP*, 2024 WL 3665801, at *8 (D. Del. Aug. 6, 2024) ("It is well-established that a method of treatment need not be FDA-approved to be patentable.").  However, the preamble of a method of treatment claim can be limiting.  *Eli Lilly and Co. v. Teva Pharms. Int'l GmbH* , 8 F.4th 1331, 1342 (Fed Cir. 2021) (finding that the preamble for the method of treatment claim is "a statement of the intentional purpose for which

17

the method must be performed" as the Federal Circuit has "not hesitated to hold preambles limiting when they state an intended purpose for methods of using a compound").

44.    The Federal Circuit and Courts of this District, and elsewhere, have previously refused to construe method of treatment claims to include efficacy requirements. *Novartis Pharms. Corp. v. Accord Healthcare Inc.*, 387 F. Supp. 3d 429, 437-38 (D. Del. 2019) (refusing to define method of treatment claims to require an actual effect on a patient's multiple sclerosis as there was nothing "in the claims, specification, or prosecution history [to] warrant reading into the claims an efficacy limitation" and that "[w]hile the general purpose of the invention is to achieve a safe and effective manner of treating MS, such efficacy is not a limitation of the claims"); *In re Xencor, Inc.*, 130 F.4th 1350, 1359–60 (Fed. Cir. 2025) (finding that the "treating a patient" limitation in the patent claim at issue did not require a particular effectiveness or result); *Boehringer Ingelheim Pharms., Inc. v. Hec Pharm Co., Ltd.*, 2017 WL 11633325, at *3-4 (D.N.J. Jan. 5, 2017); *Celgene Corp. v. Hetero Labs Ltd.*, 2020 WL 3249117, at *6-7 (D.N.J. June 16, 2020) (refusing to import efficacy into the claim term "treating multiple myeloma" where the specification of the patent stated that the summary of the invention included administering a "therapeutically or prophylactically effective" amount of the claimed compound and contained other information discussed in terms of efficacy); *Phigenix, Inc. v. Genentech Inc.*, 2016 WL 4172202, at *2 (N.D. Cal. Aug. 8, 2016) (finding that no construction of "method of treating a breast condition in a subject" and "method of treating breast cancer or MIN in a subject" was necessary and that "neither party could argue the treating terms require any particular level of therapeutic effectiveness"). *See also Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 332–34 (D. Del. 2010), *aff'd*, 675 F.3d 1324 (Fed. Cir. 2012) (declining to construe a claimed "perfusion" to include limitations for safety, efficacy, and stability, finding that a POSA would not understand "perfusion" to include

those limitations) ("At the formulation stage, researchers simply cannot know whether a perfusion will be sufficiently safe and effective to be useful in clinical settings. Indeed, this is why clinical trials are necessary before patented pharmaceutical compositions can be marketed to the general public.").

### b. Combining References or Modifying a Single Reference

#### i. Motivation to Combine

45.  To prove that a patent is obvious, a party must demonstrate that a "skilled artisan would have been motivated to combine or modify the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, 141 F.4th 1367, 1374 (Fed. Cir. 2025) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)); *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014); *Regents of Univ. of Cal. v. Broad Inst., Inc.*, 903 F.3d 1286, 1291 (Fed. Cir. 2018); *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1364 (Fed. Cir. 2008) (rejecting obviousness argument where prior art provided no "reason to select (among several unpredictable alternatives) the exact route" to the invention); *Eisai Co. Ltd. v. Dr. Reddy's Lab'ys, Ltd.*, 533 F.3d 1353, 1359 (Fed. Cir. 2008) (rejecting obviousness argument where modifications did not lead to a "an identifiable, predictable solution"); *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356–57 (Fed. Cir. 2007); *Procter & Gamble*, 566 F.3d at 994; *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1344–45 (Fed. Cir. 2000) (affirming that defendants "did not show sufficient motivation for one of ordinary skill in the art at the time of invention to take any one of the following steps, let alone the entire complex combination"); *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1060 (Fed. Cir. 2019) (assessing a motivation to

modify the prior art disclosing a treatment method with a different compound when determining the obviousness of method of treatment claims).

46.    "A reason for combining disparate prior art references is a critical component of an obviousness analysis; 'this analysis should be made explicit.'" *InTouch Techs.*, 751 F.3d at 1351 (quoting *KSR*, 550 U.S. at 418).  It is "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the [claimed] elements in the way the claimed new invention does." *Id. See also In re Vaidyanathan*, 381 F. App'x 985, 993 (Fed. Cir. 2010) (factfinder must "anchor the analysis in explanation of how a person of ordinary skill would select and apply the teachings of the references.").  This is so "because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *InTouch Techs.*, 751 F.3d at 1351 (quoting *KSR*, 550 U.S. at 418–19).  Thus, even where "all claim limitations are found in a number of prior art references, the burden falls on the challenger of the patent to show by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer*, 480 F.3d at 1361.

47.    Only stating that there is a "general motivation" to develop a claimed invention is insufficient proof of a motivation to combine particular references.  *See Innogenetics, N.V. v. Abbott Lab'ys.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) ("[K]nowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references to reach the particular claimed [invention].");  *Abbott Lab'ys. v. Sandoz, Inc.*, 544 F.3d 1341, 1351-52 (Fed. Cir. 2008);  *see Corning Inc. v. SRU Biosystems*, 400 F. Supp. 2d 653, 670-71 (D. Del. 2005) (criticizing expert's analysis where expert relied only on references selected by counsel, used the

20

claims of the patent-in-suit to select and focus on particular disclosures of those references, and referred only to "general motivations" to combine references); *Janssen*, 141 F.4th at 1379 ("It is bedrock law that the inquiry of motivation and reasonable expectation of success must focus on arriving at the *claimed* invention, though more than one step may be involved in getting there.") (emphasis in original).

48.     A motivation to combine does not exist merely because two references come from the same field. *William Wesley Carnes, Sr., Inc. v. Seaboard Int'l Inc.*, 2019 WL 2041926, at *7 (P.T.A.B. May 8, 2019) (finding that petitioner's argument that there was a motivation to combine two references because they both address oil and gas exploration and drilling "does not constitute an articulated reasoning with rational underpinning as to why a POSITA would combine elements of one reference with another, and why a POSITA would modify the teachings of the references to arrive at the claimed invention"); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012) (finding that where two references both addressed draining fluids there was no motivation to combine them into a single device).

49.     "[K]nowledge of a problem and motivation to solve it are entirely different from motivation to combine particular references to reach the particular claimed method." *Innogenetics*, 512 F.3d at 1373, 1374 n.3 (holding that it is impermissible to use "hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention.").

50.     A POSA would not be motivated to implement a modification designed to address one problem if it would likely create an equal or greater problem in another area. *See Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino*, 738 F.3d 1337, 1346 (Fed. Cir. 2013) (allegedly obvious combination would be avoided because of prior art teaching that such changes

21

would lead to toxicity); *Janssen Pharmaceutica N.V. v. Mylan Pharms., Inc.*, 456 F. Supp. 2d 644, 666–67 (D.N.J. 2006) (finding the POSA "would have avoided modifying [] chemical structure, because such modifications are risky and uncertain" and other safer, and more conventional, routes to obtaining the desired result existed).

51.     Courts have considered safety and efficacy in the motivation to combine analysis even where safety and efficacy are not claimed.  *Janssen*, 141 F.4th at 1383 ("[I]t is not legal error or clear error to consider unclaimed factors in the [motivation to combine] analysis 'if a skilled artisan would reasonably consider' these unclaimed factors in the process of 'creating a useful claimed invention.'") (quoting *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024)); *Pharmacyclics LLC v. Alvogen Pine Brook LLC*, 556 F. Supp. 3d 377, 403 (D. Del. 2021*), aff'd sub nom. Pharmacyclics LLC v. Alvogen, Inc.*, 2022 WL 16943006 (Fed. Cir. Nov. 15, 2022) (assessing the safety and efficacy of a method of treatment when determining whether a POSA would have been motivated to treat the claimed condition using the claimed compound).

## ii. Teaching Away

52.     "Evidence suggesting reasons to combine cannot be viewed in a vacuum apart from evidence suggesting reasons not to combine." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1363 (Fed. Cir. 2017).

53.     "A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994).

22

54.    Typically, "[t]he degree of teaching away will of course depend on the particular facts; in general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant." *Id. See also Millennium Pharms.*, 862 F.3d at 1366–67 (finding that the invention (lyophilizing bortezomib with mannitol to form an ester) would have been avoided by a POSA because it could disturb the chemical properties whereby the molecule effectively functions as an anti-cancer agent); *AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1337–38 (Fed. Cir. 2021) (refusing to require that the prior art include an explicit disparagement of the invention and upholding the district court's credit of the expert testimony that discussed how a POSA would interpret the prior art to find implicit disparagement).

55.    "'Teaching away' does not require that the prior art foresaw the specific invention that was later made, and warned against taking that path.  It is indeed of interest if the prior art warned against the very modification made by the patentee, but it is not the sole basis on which a trier of fact could find that the prior art led away from the direction taken by the patentee." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1343 (Fed. Cir. 2011), *abrogated by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016).

### c.  Reasonable Expectation of Success

56.    Obviousness cannot be established by asserting that the POSA "would have arrived at the claimed invention through routine optimization." *Alcon Rsch., Ltd. v. Watson Lab'ys, Inc.*, 2018 WL 1115090, at *23 (D. Del. Mar. 1, 2018) (quoting *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017)).  "A general incentive does not make obvious a particular result, nor does the existence of techniques by which those efforts can be carried out." *In re Deuel*, 51 F.3d 1552, 1559 (Fed. Cir. 1995).  Routine optimization must be accompanied by a reasonable expectation of success.  *In re Stepan Co.*, 868 F.3d at 1346.  "The reasonable expectation of success requirement

23

refers to the likelihood of success in combining references to meet the limitations of the claimed invention." *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016). "One must have a motivation to combine accompanied by a reasonable expectation of achieving what is claimed in the patent-at-issue." *Id.*

57.    "[E]ven if it was obvious to experiment with [certain] options," an invention is not obvious when "there is nothing to indicate that a skilled artisan would have had a reasonable expectation that such an experiment would succeed." *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1357 (Fed. Cir. 2013). Indeed, a patent challenger must further show by clear and convincing evidence that a POSA motivated to combine the teachings of the prior art references would have had a reasonable expectation of success in doing so. *E.g., In re Cyclobenzaprine*, 676 F.3d at 1068-69; *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1362-63 (Fed. Cir. 2009); *Otsuka Pharm. Co., Ltd. v. Sandoz, Inc.*, 678 F.3d 1280, 1292-93 (Fed. Cir. 2012); *Eli Lilly*, 8 F.4th at 1343-44.

58.    "[I]t [is] not enough for the appellant-defendant to [show] that a skilled artisan would have pursued the claimed method as a treatment option, but the appellant-defendant also ha[s] to show that the skilled artisan would have reasonably expected to achieve success in the treatment." *Eli Lilly*, 8 F.4th at 1343-47; *Pharmacyclics LLC v. Alvogen Pine Brook LLC*, 556 F. Supp. 3d 377, 404 (D. Del. 2021) (two partial responses in R/R MCL patients in a phase I trial "did not teach the efficacy of ibrutinib for treating R/R MCL, and an artisan of ordinary skill could not have reasonably expected success in light of the unpredictable nature of oncology and the study's extremely small sample size"), *aff'd sub nom. Pharmacyclics LLC v. Alvogen, Inc.*, 2022 WL 16943006 (Fed. Cir. Nov. 15, 2022).

59.    "[T]o have a reasonable expectation of success, one must be motivated to do more than merely to . . . try each of numerous possible choices until one possibly arrived at a successful result." *In re Stepan Co.*, 868 F.3d at 1347 (alteration in original).

60.    The Federal Circuit considers the potential harm and safety concerns of methods in determining whether they were obvious regardless of whether the claims contain safety limitations. *Eli Lilly and Co. v. Actavis Elizabeth LLC*, 435 F. App'x 917, 919-21 (Fed. Cir. 2011) (method of treatment using an "effective" amount of a drug not obvious where the prior art reported that a similar compound caused death in children, and there was no evidence that the claimed treatment would be "devoid of the negative effects of known and similar products"); *see also Novartis Pharms. Corp. v. Breckenridge Pharm., Inc.*, 248 F. Supp. 3d 578, 590-91, 593, 594 (D. Del. 2017) (method of treatment by co-administering synergistically effective amounts of two drugs nonobvious where there was no evidence that the combination would be safe for humans in light of each drug's known toxicities), *rev'd on other grounds by*, 909 F.3d 1355 (Fed. Cir. 2018).

61.    The Federal Circuit also considers the efficacy of methods in determining whether they were obvious regardless of whether the claims contain efficacy limitations. *Janssen,* 141 F.4th at 1383 (finding that the reasonable expectation of success analysis was proper where "a relevant artisan would not reasonably expect the claimed dosing regimen to be a safe and effective treatment" where the dosing claims required no safety or efficacy); *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1384-85 (Fed. Cir. 2019) (considering efficacy when assessing reasonable expectation of success for method of treatment claims without claimed efficacy limitations). While "[t]he law certainly does not require 'conclusive proof of efficacy' . . . [a]t the same time, cautious optimism is not sufficient." *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2023 WL 4175334, at *14-15 (D. Del. June 26, 2023) (finding that there was no reasonable expectation of success for method

of increasing survival claims where the patent challenger did not provide evidence that a POSA could reasonably expect success for at least some patients).

62.     "Absolute predictability is not required," but the patent challenger must demonstrate that there is a "reasonable expectation of success tied to the claimed invention." *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1381 (Fed. Cir. 2021) (finding that the assessment of reasonable expectation of success for a method of treatment claim that required "safe administration" did not require that a POSA "would have precisely predicted safe co-administration" and ultimately finding that there was no reasonable expectation of success where "the evidence support[ed] that [a skilled artisan] would have had *no expectation*" as to whether the method of treatment would be successful) (emphasis in original).

63.     Statements from the prior art must be read in the proper context when determining whether a POSA would have had a reasonable expectation of success; a hope that a drug will work or a hypothesis that requires further testing does not support a reasonable expectation of success. *See OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1384–85 (Fed. Cir. 2019*); Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2023 WL 4175334, at *14 (D. Del. June 26, 2023) (Plaintiff's expert "was able to list a variety of cancer drugs that failed at Phase III. Therefore, [the court did] not think a POSA would reasonably extrapolate from the fact that a Phase III trial had begun that a drug could be expected to be successful."), appeal dismissed, 2023 WL 6532673 (Fed. Cir. Oct. 6, 2023); *Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636, 641, 646-50 (Fed. Cir. 2017) (finding no reasonable expectation of success even though the prior art disclosed a study's "rationale and design" because a POSA "would have been at best cautiously optimistic that dronedarone could reduce the risk of cardiovascular hospitalization."); *Novartis*, 923 F.3d at 1061 (no reasonable expectation of success based on evidence including phase I results); *Eli Lilly*, 8 F.4th at 1347

26

(finding there was no reasonable expectation of success where the cited prior art lacked clinical data showcasing the efficacy of the claimed method of treatment and lacked "any other 'information,' 'direction,' or 'specific[ ] suggest[ion]' that would have led to a reasonable expectation of success.").

### d. Obvious to Try

64.    An invention would have been "obvious to try" only if the prior art identified the path to the claimed invention and "there are a finite number of identified, predictable solutions" to be tried, *KSR*, 550 U.S. at 421, *i.e.*, the number of possible solutions, "in the context of the art," must be small or easily traversed. *Ortho-McNeil Pharm.*, 520 F.3d at 1364.  If these circumstances are not present, the invention is not obvious.  *See Unigene Lab'ys, Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361 (Fed. Cir. 2011) ("When a field is 'unreduced by direction of the prior art,' and when prior art gives 'no indication of which parameters were critical or no direction as to which of many possible choices is likely to be successful,' an invention is not obvious to try."); *Janssen Pharms., Inc. v. Tolmar, Inc.*, 718 F. Supp. 3d 394, 428 (D. Del. 2024), r*econsideration denied sub nom. Janssen Pharms., Inc. v. Tolmar, Inc.*, 2024 WL 2972832 (D. Del. June 13, 2024) ("The claimed dosing regimen solved a 'problem . . . not known in the art,' and the solution to the unknown problem would not have been obvious.").

65.    "To prove obviousness under an obvious to try theory, [the patent challenger] must show (1) a design or market need to solve a particular problem, *and* (2) that "there are a finite number of identified, predictable solutions" that would lead to an expectation of success." *Grunenthal GmbH v. Alkem Lab'ys Ltd.*, 919 F.3d 1333, 1345 (Fed. Cir. 2019) (emphasis in original); *Leo Pharm.*, 726 F.3d at 1356-57 (finding that the claimed invention was not obvious where a POSA would not have recognized the problem addressed by the claimed invention and

27

where there was not reasonable expectation of success that experimenting with the claimed components would succeed in being therapeutically effective).

66.     To prove a reasonable expectation of success, "[i]t is not sufficient to merely assert an 'obvious-to-try theory,' especially where . . . the relevant art is littered with a history of inconsistent clinical trial results." *Sanofi v. Glenmark Pharms. Inc. USA*, 204 F. Supp. 3d 665, 696 (D. Del. 2016) (citing *In re Cyclobenzaprine*, 676 F. 3d at 1072–73) (finding that "while a POSA may have been motivated to try" the claimed method of treatment based on the prior art, "a POSA . . . would not have had a reasonable expectation of success, given what was known" in the art).

### e.  *Obviousness Cannot Rely on Hindsight*

67.     Hindsight is not permitted when determining whether a claim would have been obvious to one having ordinary skill in the art.  *See KSR*, 550 U.S. at 415, 421 (cautioning against "the distortion caused by hindsight bias" and obviousness "arguments reliant upon ex post reasoning"); *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017) ("[W]e cannot allow hindsight bias to be the thread that stitches together prior art patches into something that is the claimed invention.").  In other words, "the proper analysis requires a form of amnesia that 'forgets' the invention and analyzes the prior art and understanding of the problem at the date of invention." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012); *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999) ("Measuring a claimed invention against the standard established by section 103 requires the oft-difficult but critical step of casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field."), *abrogated on other grounds*, *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000).

68.     For this reason, obviousness cannot be proved by starting from the claimed invention and working backward to identify each limitation in the prior art.  *See Ortho-McNeil*

*Pharm.*, 520 F.3d at 1364 (defendant did not prove obviousness where its expert "simply retraced the path of the inventor with hindsight"); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1051-1054 (Fed. Cir. 1988) (district court erred by using hindsight to reconstruct the invention from prior art, rather than viewing the invention from the perspective of the POSA at the time the invention was made); *InTouch Techs.*, 751 F.3d at 1351–52 (finding that expert errantly used the challenged patent as a roadmap for assembling disparate references which was impermissible hindsight); *Yamanouchi Pharm.*, 231 F.3d at 1343-45 (patent challenger's failure to show sufficient motivation "has all the earmarks of somebody looking at this from hindsight."); *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1337 (Fed. Cir. 2005).

69.     It is imperative to consider how a person of ordinary skill in the art would have viewed the relevant art to ascertain whether "the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention," 35 U.S.C. § 103; that is, to avoid the "insidious effect of a hindsight syndrome." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1553 (Fed. Cir. 1983); *see also KSR*, 550 U.S. at 421; *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1375 (Fed. Cir. 2011) ("Importantly, the great challenge of the obviousness judgment is proceeding without any hint of hindsight."); *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1088 (Fed. Cir. 2008); *see In re Rouffet*, 149 F.3d at 1357-58.

70.     A finding of obviousness cannot be based upon hindsight selection of elements of the claimed invention from among the disclosures of the prior art. *E.g., In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986) ("It is impermissible within the framework of section 103 to pick and choose from any one reference only so much of it as will support a given position, to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one of ordinary skill in the art." (quoting *In re Wesslau*, 353 F.2d 238, 241 (C.C.P.A. 1965))); *Otsuka*

*Pharm.*, 678 F.3d at 1294-96. Failure to consider the prior art as a whole compels rejection of an obviousness contention. *Ortho-McNeil Pharm.*, 520 F.3d at 1364 (rejecting obviousness challenge on the basis that challenger's expert "discounted the number and complexity of the alternatives").

71.    Where "a defendant urges an obviousness finding by 'merely throw[ing] metaphorical darts at a board' in hopes of arriving at a successful result, but 'the prior art gave . . . no direction as to which of many possible choices is likely to be successful,' courts should reject 'hindsight claims of obviousness.'" *In re Cyclobenzaprine*, 676 F.3d at 1070–71 (quoting *In re Kubin*, 561 F.3d 1351, 1359 (Fed. Cir. 2009)); *see Leo Pharm.*, 726 F.3d at 1357.

72.    As the Federal Circuit has explained post-*KSR*, retracing the path of the inventor with hindsight, and discounting the number and complexity of the alternatives, is always inappropriate for an obviousness test based on the language of 35 U.S.C. § 103 that requires the analysis to examine "the subject matter as a whole" to ascertain if it "would have been obvious at the time the invention was made." *Ortho-McNeil*, 520 F.3d at 1363–64.  The Federal Circuit explained that "at the time of invention, the inventor's insights, willingness to confront and overcome obstacles, and yes, even serendipity, cannot be discounted." *Id.*

### f.    Objective Evidence of Nonobviousness

73.    To protect against the improper use of hindsight when assessing obviousness, the Court is required to consider objective evidence of non-obviousness, such as commercial success, failure of others, unexpected results, industry praise, and long-felt but unmet need.  *See, e.g., Millennium Pharms.*, 862 F.3d at 1367-68; *Leo Pharm.*, 726 F.3d at 1358-59.

74.    The patentee is "not required to present evidence" of objective indicia. *Novartis Pharms. Corp. v. West-Ward Pharms. Int'l Ltd.*, 287 F. Supp. 3d 505, 510 (D. Del. 2017).  "When present, such objective evidence must be considered," because "[i]t can be the most probative evidence of nonobviousness in the record, and enables the district court to avert the trap of

30

hindsight." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 960 (Fed. Cir. 1986); *Ortho–McNeil Pharm.*, 520 F.3d at 1365 ("[T]his evidence is not just a cumulative or confirmatory part of the obviousness calculus but constitutes independent evidence of nonobviousness."); *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986) ("Objective evidence . . . is not merely 'icing on the cake.'"); *In re Cyclobenzaprine*, 676 F.3d at 1075 (holding that the district court erred by determining that the patents were obvious before considering the objective evidence of nonobviousness). "Objective indicia of nonobviousness play a critical role in the obviousness analysis." *Leo Pharm.*, 726 F.3d at 1358 (quoting *Ortho–McNeil Pharm.*, 520 F.3d at 1365). "They are 'not just a cumulative or confirmatory part of the obviousness calculus but constitute[ ] independent evidence of nonobviousness.'" *Id.* (alteration in original). The objective indicia of nonobviousness "guard as a check against hindsight bias," *In re Cyclobenzaprine*, 676 F.3d at 1079, and "provide objective evidence of how the patented device is viewed in the marketplace, by those directly interested in the product." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1391 (Fed. Cir. 1988).

75.     "On the other hand, the absence of objective evidence does not preclude a holding of nonobviousness because such evidence is not a requirement for patentability." *Id.* The burden of proof rests with the Defendants and does not shift to Plaintiffs. *In re Cyclobenzaprine*, 676 F.3d at 1078 n. 5 (Fed. Cir. 2012) ("[T]he party challenging validity bears the burden of persuasion throughout the litigation.") (citing *Microsoft*, 564 U.S. at 100 n. 4).

76.     In order to accord substantial weight to objective evidence, or secondary considerations, "the evidence of secondary considerations must have a nexus to the claims, *i.e.*, there must be a legally and factually sufficient connection between the evidence and the patented

31

invention." *Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, 8 F.4th 1349, 1360 (Fed. Cir. 2021) (cleaned up). A nexus is presumed where "the patentee shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'" *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016). Under such circumstances, the burden shifts to the party alleging obviousness to rebut the presumed nexus. *See id.* The party alleging obviousness "cannot successfully rebut the presumption with argument alone—it must present evidence." *Id. See also Polaris Indus., Inc. v. Arctic Cat, Inc.,* 882 F.3d 1056, 1072 (Fed. Cir. 2018).

77.     "Evidence that the industry praised a claimed invention or a product that embodies the patent claims weighs against an assertion that the same claimed invention would have been obvious." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1053 (Fed. Cir. 2016) (*en banc*); *Institut Pasteur*, 738 F.3d at 1347 ("[I]ndustry praise . . . provides probative and cogent evidence that one of ordinary skill in the art would not have reasonably expected [the claimed invention]."); *see also WBIP*, 829 F.3d at 1334 ("[I]f there is evidence of industry praise in the record, it weighs in favor of the nonobviousness of the claimed invention.").

78.     "Industry participants, especially competitors, are not likely to praise an obvious advance over the known art." *Apple*, 839 F.3d at 1053; *see also Genzyme Corp. v. Dr. Reddy's Lab'ys., Ltd.*, 2016 WL 2757689, at *15 (D. Del. May 11, 2016); *Pfizer Inc. v. Mylan Pharms. Inc.*, 71 F. Supp. 3d 458, 476 (D. Del. 2014) (finding that the claimed invention "was a breakthrough in the industry, widely praised by researchers and doctors"), *aff'd*, 628 F. App'x 764 (Fed. Cir. 2016); *The Rsch. Found. of State Univ. of N.Y. v. Mylan Pharms. Inc.*, 723 F. Supp. 2d 638, 653 (D. Del. 2010). "Appreciation by contemporaries skilled in the field of the invention is

32

a useful indicator of whether the invention would have been obvious to such persons at the time it was made." *Vulcan Eng'g Co. Inc. v. Fata Aluminium, Inc.*, 278 F.3d 1366, 1373 (Fed. Cir. 2002).

79.     "Evidence of industry skepticism is a question of fact that weighs in favor of non-obviousness." *Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1377 (Fed. Cir. 2019).  A finding of skepticism does not require that the result be "'technically infeasible,' 'unworkable,' or 'impossible.'" *Id.* at 1378.  Rather, a showing that a relevant third party was "worried" about whether the claimed result would come about can support a finding of skepticism.  *Id.* (quoting *Circuit Check Inc. v. QXQ Inc.*, 795 F.3d 1331, 1337 (Fed. Cir. 2015)).

80.     "If industry participants or skilled artisans are skeptical about whether or how a problem could be solved or the workability of the claimed solution, it favors non-obviousness." *WBIP*, 829 F.3d at 1335.  "[P]roceeding against accepted wisdom is evidence of unobviousness." *See Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 958 (Fed. Cir. 1997) (citing *In re Hedges*, 783 F.2d 1038, 1041 (Fed. Cir. 1986)).

81.     "The existence of a long-felt but unsolved need that is met by the claimed invention is . . . objective evidence of non-obviousness." *Millennium Pharms.*, 862 F.3d at 1369. "Recognition of [a] need, and difficulties encountered by those skilled in the field, are classical indicia of unobviousness." *In re Dow Chem. Co.*, 837 F.2d 469, 472 (Fed. Cir. 1988); *see also In re Cyclobenzaprine*, 676 F.3d at 1082 ("Evidence is particularly probative of obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand."); *Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1574 (Fed. Cir. 1992) (finding that a long-felt but unmet need can be "established by the attempts and failures of the major players in the . . . field").

82.     "If people are clamoring for a solution, and the best minds do not find it for years, that is practical evidence—the kind that can't be bought from a hired expert, the kind that does not depend on fallible memories or doubtful inferences—of the state of knowledge." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354, 1378 (N.D. Ill. 1993) (citing *Minn. Mining & Mfg.*, 976 F.2d at 1574-75), *aff'd*, 71 F.3d 1573 (Fed. Cir. 1995); *Leo Pharm.*, 726 F.3d at 1359; *WBIP*, 829 F.3d at 1332 ("Evidence of a long felt but unresolved need tends to show non-obviousness because it is reasonable to infer that the need would have not persisted had the solution been obvious.").

83.     Long-felt but unmet needs are assessed as of the time the invention was made, in view of "the date of an articulated identified problem and evidence of efforts to solve that problem." *WBIP*, 829 F.3d at 1334; *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993).

84.     Where existing treatments are inadequate and effective treatments are lacking for conditions, evidence of an enduring and unmet need has supported a finding of nonobviousness. *Procter & Gamble*, 566 F.3d at 998 (affirming a finding of long-felt need because "osteoporosis was recognized as a serious disease and existing treatments were inadequate"); *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys., Inc.*, 348 F. Supp. 2d 713, 758 (N.D. W. Va. 2004) (finding a long-felt need for a broad-spectrum drug to treat respiratory infections where the effectiveness of the current agents against certain classes of pathogens was inadequate); *Janssen*, 456 F. Supp. 2d at 649, 670 (finding long-felt need existed for safe antipsychotic not associated with the "serious side effects" of the other approved antipsychotic drugs); *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1380 (Fed. Cir. 2006) (finding existence of "long-felt need for a safer, less toxic, and more effective" antipsychotic); *In re Cyclobenzaprine*, 676 F.3d at 1080, 1082-83; *see*

34

*also Leo Pharm. Prods., Ltd. v. Rea*, 726 F. 3d 1346, 1358 (Fed. Cir. 2013) ("While FDA approval is not determinative of nonobviousness, it can be relevant in evaluating the objective indicia of nonobviousness."); *Sanofi*, 204 F. Supp. 3d at 695 (finding there was a long-felt need for the claimed method of treatment, even with other drugs of the same class on the market because "[i]t ha[d] been notoriously difficult to develop a drug with high efficacy . . . with a favorable side effect profile").

85.     If a POSA would find results or properties of an invention to be unexpected or surprising, that is evidence of unexpected results. *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968-70 (Fed. Cir. 2006) (affirming trial court's finding of nonobviousness based on unexpected results of a claimed method for removing keratotic plugs from skin). "One way for a patent applicant to rebut a prima facie case of obviousness is to make a showing of 'unexpected results.'" *In re Soni*, 54 F.3d 746, 750 (Fed. Cir. 1995); *see also Millennium Pharms.*, 862 F.3d at 1368. Whether a result is unexpected is a question of fact. *Soni*, 54 F.3d at 749. The relevant time period for the "unexpected results" inquiry is whether the results would have been unexpected by one of ordinary skill in the art at the time of the patentee's application and based on knowledge available at that time. *See, e.g., Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967 (Fed. Cir. 2014).

86.     Evidence of unexpected results that post-dates the patent's filing or issue date can be used. *Knoll Pharm. Co., Inc. v. Teva Pharms. USA, Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004); *Genetics Inst., LLC v. Novartis Vaccines & Diagnostics, Inc.*, 655 F.3d 1291, 1307 (Fed. Cir. 2011); *In re Chu*, 66 F.3d 292, 299 (Fed. Cir. 1995) ("We have found no cases supporting the position that a patent applicant's evidence and/or arguments traversing a § 103 rejection must be contained within the specification").

35

87.    "Unexpected results are useful to show the 'improved properties provided by the claimed compositions are much greater than would have been predicted.'" *Leo Pharm.*, 726 F.3d at 1358 (quoting *Soni*, 54 F.3d at 751).  The basic principle that underlies an unexpected results analysis is "that which would have been surprising to a person of ordinary skill in a particular art would not have been obvious." *Soni*, 54 F.3d at 750.  Unexpected results that inherently flow from the claimed invention are evidence of nonobviousness and need not be described or proven in the patent specification.  *See Knoll Pharm.*, 367 F.3d at 1385 (holding that later developed evidence of unexpected results is relevant to nonobviousness).

88.    The patent challenger has the burden of proving that none of the properties of the claimed invention were unexpected.  *See Am. Hosp. Supply*, 745 F.2d at 8 ("[Patent holder] is under no compulsion either to prove a new and surprising result . . . . Rather, the burden was on [challenger] to establish the lack of new and surprising results or the lack of criticality.").

89.    Copying the patented invention is also evidence of non-obviousness.  *Forest Lab'ys., Inc. v. Ivax Pharms., Inc.*, 438 F. Supp. 2d 479, 496 (D. Del. 2006) ("The success of Lexapro® and its benefits compared to other SSRIs is also supported by the efforts of generic drug manufacturers, including Defendants, to copy the claimed invention."), *aff'd*, 501 F.3d 1263 (Fed. Cir. 2007); *Janssen*, 456 F. Supp. 2d at 671 (finding copying based on multiple ANDAs filed with the FDA to market generic versions of the patented drug); *WBIP*, 829 F.3d at 1336 ("Copying may indeed be another form of flattering praise for inventive features . . and thus evidence of copying tends to show nonobviousness."); *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed. Cir. 1986); *see also Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 991 (Fed. Cir. 1988).

90.    Copying is also probative evidence of non-obviousness where alternative development efforts by the alleged infringer were unsuccessful.  *Friskit, Inc. v. Real Networks,*

*Inc.*, 306 F. App'x 610, 616 (Fed. Cir. 2009); *Bayer Pharma AG v. Watson Lab'ys, Inc.*, 183 F. Supp. 3d 538, 550 (D. Del. 2016), *aff'd in part, rev'd in part*, 874 F.3d 1316 (Fed. Cir. 2017) (finding that copying was evidence of non-obviousness where the defendant considered alternative formulations but ended up copying the plaintiff's formulation).

### 7.    Written Description Under 35 U.S.C. §112

91.    Section § 112(a) requires that "[t]he specification . . . contain a written description of the invention." 35 U.S.C. §112. "To overcome the presumption of validity of patents, the accused must show that the claims lack a written description by clear and convincing evidence." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1351 (Fed. Cir. 2011); *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 938 (Fed. Cir. 2019); *Ajinomoto Co., Inc. v. Int'l Trade Comm'n*, 932 F.3d 1342, 1352 (Fed. Cir. 2019).

92.    A patent's specification must contain a written description that "clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991)). The written description question is to be answered from the perspective of a person of ordinary skill in the art. *Allergan USA, Inc. v. MSN Lab'ys Private Ltd.*, 111 F.4th 1358, 1377 (Fed. Cir. 2024); *see also Immunex Corp. v. Sandoz Inc.*, 964 F.3d 1049, 1063 (Fed. Cir. 2020) ("Written description is a question of fact, judged from the perspective of one of ordinary skill in the art as of the relevant filing date." (citation omitted)).

93.    "Written description asks whether that which is claimed is adequately described." *In re Entresto*, 125 F.4th 1090, 1098 (Fed. Cir. 2025). "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms.*, 598 F.3d at 1351; *Allergan*, 111 F.4th at 1373; *Evans v. Eaton*, 20 U.S. 356, 434 (1822) (The purpose

37

of requiring a written description under the Patent Act of 1793 was to "put the public in possession of what the party claims as his own invention, so as to ascertain if he claim[s] any thing that is in common use, or is already known."); *Allergan*, 111 F.4th at 1375 ("As the 'hallmark' of written description, the disclosure must be considered as a whole, as the person of ordinary skill in the art would read it, to determine if it *reasonably* conveys possession.") (emphasis original, citation omitted). "'Based on that inquiry'—and not based on other considerations—'the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed.'" *Biogen Int'l GmbH v. Mylan Pharms. Inc.*, 28 F.4th 1194, 1195-96 (Fed. Cir. 2022) (J. Lourie, dissent). "A showing of 'possession' is ancillary to the statutory mandate that '[t]he specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, the specification does not adequately describe the claimed invention." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002).

94.    "[P]ossession is shown by disclosure in the patent." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1299 (Fed. Cir. 2014). The test for reasonably conveying possession of an invention is a flexible one, "requir[ing] an objective inquiry into the four corners of the specification from the perspective of a [POSA]." *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 127 F.4th 896, 914 (Fed. Cir. 2025) (internal quotation marks and citation omitted); *Biogen Int'l GmbH v. Mylan Pharms. Inc.*, 18 F.4th 1333, 1342 (Fed. Cir. 2021); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013) (quoting *Ariad Pharms.*, 598 F.3d at 1351) ("Assessing 'possession as shown in the disclosure' requires 'an objective inquiry into the four corners of the specification.'"); *see also Nalpropion Pharms., Inc. v. Actavis Lab'ys FL, Inc.*, 934 F.3d 1344, 1351 (Fed. Cir. 2019) ("Rigidity should

38

yield to flexible, sensible interpretation."); *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1344 (Fed. Cir. 2013). The written description requirement "is met if the specification shows that the stated inventor has in fact invented what is claimed, that he had possession of it" and such "possession is shown by disclosure in the patent." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1299 (Fed. Cir. 2014); *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022). "The [written description] requirement is applied in the context of the state of knowledge at the time of the invention." *Zoltek Corp. v. United States*, 815 F.3d 1302, 1308 (Fed. Cir. 2016).

95.     "[W]ritten description is about whether the skilled reader of the patent disclosure can recognize that what was claimed corresponds to what was described; it is not about whether the patentee has proven to the skilled reader that the invention works, or how to make it work, which is an enablement issue." *Alcon Rsch. Ltd. v. Barr Lab'ys, Inc.*, 745 F.3d 1180, 1191 (Fed. Cir. 2014); *see also Miles Lab'ys, Inc. v. Shandon Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993) (operability is relevant only "to the enablement requirement of § 112"). "Although there is often significant overlap between the three requirements [of 35 U.S.C. § 112], they are nonetheless independent of each other. Thus, an invention may be described without an enabling disclosure of how to make and use it." *University Of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 920–22 (Fed. Cir. 2004); *Capon v. Eshhar*, 418 F.3d 1349, 1360 (Fed. Cir. 2005) ("Although the legal criteria of enablement and written description are related and are often met by the same disclosure, they serve discrete legal requirements.").

96.     "[I]t is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue

experimentation." *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366 (Fed. Cir. 2006). "It is not necessary that the exact terms of a claim be used in haec verba in the specification, and equivalent language may be sufficient." *Nalpropion Pharms.*, 934 F.3d at 1350. An "application need only reasonably convey to one skilled in the art that [the inventor] had possession of *at least one* embodiment." *Tobinick v. Olmarker*, 753 F.3d 1220, 1225, 1226-27 (Fed. Cir. 2014). "[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad Pharms.*, 598 F.3d at 1351. "For generic claims, … [there are] a number of factors for evaluating the adequacy of the disclosure, including 'the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue.'" *Id.*

97.    "[T]he written description requirement 'does not demand either examples or an actual reduction to practice; a constructive reduction to practice that in a definite way identifies the claimed invention can satisfy the written description requirement.'" *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1285 (Fed. Cir. 2012) (quoting *Ariad Pharms.*, 598 F.3d at 1352); *Falko-Gunter*, 448 F.3d at 1366 ("[E]xamples are not necessary to support the adequacy of a written description."); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66 (1998) ("[I]t does not follow that proof of reduction to practice is necessary in every case.").

98.    "In the pharmaceutical and other medical arts, applications claiming new methods of treatment are typically supported by test results." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 541 F. Supp. 3d 435, 445 (D. Del. 2021) (citing *In re '318 Patent Infringement Litig.*, 583 F.3d 1317, 1324 (Fed. Cir. 2009)). However, "actual reduction to practice and the results of clinical trials are not required in every instance." *Id. See also Nuvo Pharms. (Ireland) Designated Activity*

40

*Co. v. Dr. Reddy's Lab'ys Inc.*, 923 F.3d 1368, 1380 (Fed. Cir. 2019) ("It is true that our case law does not require experimental data demonstrating effectiveness … [and] [i]t also does not require theory or explanation of how or why a claimed composition will be effective."); *Falko-Gunter*, 448 F.3d at 1366 (finding that where the claims were directed to a poxvirus vaccine, it was not dispositive that a poxvirus vaccine had not yet been produced); *In re '318 Patent Infringement Litig.*, 583 F.3d at 1324 ("Typically, patent applications claiming new methods of treatment are supported by test results. But it is clear that testing need not be conducted by the inventor."); *Ariad Pharms.*, 598 F.3d at 1352.  "An inventor need not 'prove that a claimed pharmaceutical compound actually achieves a certain result.  But when the inventor expressly claims that result, [] case law provides that [such] result must be supported by adequate disclosure in the specification.'" *Biogen*, 18 F.4th at 1343 (citing *Nuvo Pharms.*, 923 F.3d at 1384).

99.    "[A]n invention can be 'complete' even where an actual reduction to practice is absent." *Falko-Gunter*, 448 F.3d at 1367; *Pharmacyclics*, 556 F. Supp. 3d at 401 (finding sufficient written description where a POSA "would have been able to follow the protocol" of an example of the specification using the inhibitor of interest "to practice the method recited in [the] claim"); *Allergan*, 796 F.3d at 1308–09 ("A claim that recites a property that is necessarily inherent in a formulation that is adequately described is not invalid as lacking written description merely because the property itself is not explicitly described.").

100.    At least one court has found that evidence of sufficient written description can be the fact that further clinical trials need to be conducted.  *Takeda Pharm. Co., Ltd. v. Impax Lab'ys, Inc.*, 2013 WL 2384240, at *17 (N.D. Cal. May 30, 2013) ("The fact that the clinical trials that would be necessary to determine an 'effective amount' of dexlansoprazole would be easily understood by a person skilled in the art thus supports the conclusion that the inventors possessed

41

the invention even though they did not include specific clinical testing results in the specification of the '971 Patent.").

101.   "In assessing written description, the Federal Circuit has found that "[d]isease-specific treatment requirements are matters for the FDA and medical practitioners … [as] [t]hey are best suited to make these determinations." *United Therapeutics*, 74 F.4th at 1370-71.  Further, "for any given method of treatment claim, there may be a subset of patients who would not benefit from or should not take the claimed treatment…[but] [t]hat does not mean that such claims are not sufficiently … supported by written description." *Id.*

102.   Written description should be assessed based on the "application considered as a whole." *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1346 (Fed. Cir. 2000).  The written description requirement is satisfied when "the essence of the original disclosure conveys the necessary information—regardless of *how* it conveys such information, and regardless of whether the disclosure's words [a]re open to different interpretations." *Inphi Corp. v. Netlist, Inc.*, 805 F.3d 1350, 1354 (Fed. Cir. 2015) (cleaned-up) (emphasis in original).

103.   The Federal Circuit has explicitly rejected the "characterization . . . of the court's written description doctrine as a 'super enablement' standard for chemical and biotechnology inventions." *Ariad Pharms.*, 598 F.3d at 1352.  The POSA must merely have a basis "to recognize that the inventor invented what is claimed." *Id.* at 1351.

104.    "The written description requirement is met when the disclosure allows one skilled in the art to visualize or recognize the identity of the subject matter purportedly described.  There is no rigid requirement that the disclosure contain either examples or an actual reduction to practice; the proper inquiry is whether the patentee has provided an adequate description that in a definite way identifies the claimed invention in sufficient detail such that a person of ordinary skill

42

would understand that the inventor had made the invention at the time of filing.  That assessment requires an objective inquiry into the four corners of the specification, as the hallmark of written description is disclosure." *Allergan*, 796 F.3d at 1308 (internal quotation marks and citations omitted).

> ### B.    Contested Issues of Law[1]

105.    Whether MSN has proven by clear and convincing evidence that claims 1-4, 7, 17, 18, 20, 24 and 28 of the '004 patent and claim 10 of the '399 patent are invalid as anticipated under 35 U.S.C. § 102.

106.    Whether MSN has proven by clear and convincing evidence that claims 1-4, 7, 17, 18, 20, 24 and 28 of the '004 patent and claim 10 of the '399 patent are invalid as obvious under 35 U.S.C. § 103.

107.    Whether MSN has proven by clear and convincing evidence that claims 1-4, 7, 17, 18, 20, 24 and 28 of the '004 patent and claim 10 of the '399 patent are invalid under 35 U.S.C. § 112 for lack of written description.

---

[1] Plaintiffs' inclusion of any issue of law in this pretrial order, made in response to any issue of law raised by MSN (including the legal issues set forth in this section), does not constitute agreement that any issues have been properly raised by MSN.