# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TAIHO PHARMACEUTICAL CO., LTD. and TAIHO ONCOLOGY, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No. 21-838-JLH |
| MSN LABORATORIES PRIVATE LTD. and MSN PHARMACEUTICALS INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**EXHIBIT 5**

**DEFENDANTS' STATEMENT OF ISSUES OF LAW**

**TABLE OF CONTENTS**

I.    INTRODUCTION AND RESERVATION OF RIGHTS .................................................... 1

II.   INVALIDITY .................................................................................................................. 1

      A.    Burden of Proof .................................................................................................... 2

      B.    Person of Ordinary Skill in the Art ...................................................................... 3

      C.    Anticipation (35 U.S.C § 102) ............................................................................. 3

      D.    Obviousness (35 U.S.C § 103) ............................................................................. 6

            1.    Secondary Considerations ........................................................................ 9

      E.    Written Description and Enablement (35 U.S.C. § 112) ...................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab'ys v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)............................................................................................8

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
    567 F.3d 1366 (Fed. Cir. 2009)..........................................................................................18

*Alcon Rsch., Ltd. v. Apotex Inc.*,
    687 F.3d 1362 (Fed. Cir. 2012)......................................................................................6, 10

*Allergan Inc. v. Watson Lab'ys, Inc.-Fla.*,
    869 F. Supp. 2d 456 (D. Del. 2012)...............................................................................16, 17

*Allergan v. Apotex*,
    754 F.3d 952 (Fed. Cir. 2014)............................................................................................10

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
    725 F.2d 1350 (Fed. Cir. 1984)............................................................................................2

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)..........................................................................................15

*Amgen Inc. v. F. Hoffmann-La Roche, Ltd.*,
    580 F.3d 1340 (Fed. Cir. 2009)............................................................................................7

*Amgen Inc. v. Sanofi*,
    872 F.3d 1367 (Fed. Cir. 2017)..........................................................................................19

*Ancora Techs., Inc. v. Roka, Inc.*,
    140 F.4th 1351 (Fed. Cir. 2025) ........................................................................................17

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    816 F.3d 788 (Fed. Cir. 2016),...........................................................................................14

*Application of Samour*,
    571 F.2d 559 (C.C.P.A. 1978) .............................................................................................4

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
    98 F.3d 1563 (Fed. Cir. 1996).............................................................................................11

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed Cir. 2010).......................................................................................18, 19

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  544 F.3d 1310 (Fed. Cir. 2008)........................................................................15

*Auris Health, Inc. v. Intuitive Surgical Operations, Inc.*,
  32 F.4th 1154 (Fed. Cir. 2022) ........................................................................17

*B.E. Meyers & Co. v. United States*,
  47 Fed. Cl. 375 (2000) ......................................................................................13

*Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*,
  713 F.3d 1369 (Fed. Cir. 2013).................................................................10, 16

*Bayer Schering Pharma AG v. Barr Lab'ys, Inc.*,
  575 F.3d 1341 (Fed. Cir. 2009)...........................................................................8

*Brenner v. Manson*,
  383 U.S. 519 (1966)...........................................................................................19

*Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*,
  246 F.3d 1368 (Fed. Cir. 2001)........................................................................4, 5

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
  752 F.3d 967 (Fed. Cir. 2014)...........................................................................15

*Burroughs Wellcome Co. v. Barr Laby's, Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994)...........................................................................19

*Cable Elec. Prods., Inc. v. Genmark, Inc.*,
  770 F.2d 1015 (Fed. Cir. 1985).........................................................................12

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*,
  541 F.3d 1115 (Fed. Cir. 2008).........................................................................18

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
  636 F.3d 1341 (Fed. Cir. 2011).........................................................................18

*Cont'l Can Co. USA, Inc. v. Monsanto Co.*,
  948 F.2d 1264 (Fed. Cir. 1991)........................................................................3, 5

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
  851 F.2d 1387 (Fed. Cir. 1988).........................................................................11

*Dow Chem. Co. v. Halliburton Oil Well Cementing Co.*,
  324 U.S. 320 (1945).............................................................................................9

*Duramed Pharms., Inc. v. Watson Labs, Inc.*,
  2011 U.S. Dis. LEXIS 64175 (D. Nev. 2011) ..................................................17

*Ecolochem, Inc. v. S. Cal. Edison Co.*,
227 F.3d 1361 (Fed. Cir. 2000)..........................................................................................10

*Ecolochem, Inc. v. Southern Cal. Edison Co.*,
91 F.3d 169 (Fed. Cir. 1996)..............................................................................................11

*Electro Sci. Indus., Inc. v. Gen. Scanning Inc.*,
247 F.3d 1341 (Fed. Cir. 2001)..........................................................................................14

*Eli Lilly & Co. v. Barr Lab'ys, Inc.*,
251 F.3d 955 (Fed. Cir. 2001)..............................................................................................5

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
2001 U.S. Dist. LEXIS 18361 (S.D. Ind. Oct. 12, 2001)..................................................16

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*,
45 F.3d 1550 (Fed. Cir. 1995)..............................................................................................3

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966).....................................................................................................6, 8, 10

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.*,
66 F.3d 299 (Fed. Cir. 1995)................................................................................................3

*Hospira, Inc. v. Fresenius Kabi USA, LLC*,
946 F. 3d 1322 (Fed. Cir. 2020).......................................................................................5, 6

*In re '318 Pat. Infringement Litig.*,
583 F.3d 1317 (Fed. Cir. 2009)..........................................................................................19

*In re Beattie*,
974 F.2d 1309 (Fed. Cir. 1992)............................................................................................6

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*,
676 F.3d 1063 (Fed. Cir. 2012)............................................................................................6

*In re Donohue*,
766 F.2d 531 (Fed. Cir. 1985)..............................................................................................4

*In re GPAC Inc.*,
57 F.3d 1573 (Fed. Cir. 1995)...................................................................................3, 12, 15

*In re Grasselli*,
713 F.2d 731 (Fed. Cir. 1983)............................................................................................12

*In re Graves*,
69 F.3d 1147 (Fed. Cir. 1995)..............................................................................................4

*In re Huai-Hung Kao*,
   639 F.3d 1057 (Fed. Cir. 2013) .................................................................10, 11, 13, 15

*In re Huang*,
   100 F.3d 135 (Fed. Cir. 1996) .................................................................................13

*In re Kahn*,
   441 F.3d 977 (Fed. Cir. 2006) .................................................................................14

*In re Kubin*,
   561 F.3d 1351 (Fed. Cir. 2009) .................................................................................8

*In re Nettel*,
   972 F.2d 1354, 1992 WL 124285 (Fed. Cir. 1992) ...............................................15

*In re Paulsen*,
   30 F.3d 1475 (Fed. Cir. 1994) .................................................................................11

*In re Peterson*,
   315 F.3d 1325 (Fed. Cir. 2003) ...............................................................................10

*In re Sasse*,
   629 F.2d 675 (C.C.P.A. 1980) ...................................................................................4

*Institute Pasture v. Focarino*,
   738 F.3d 1337 (Fed. Cir. 2013) ...............................................................................11

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
   392 F.3d 1317 (Fed. Cir. 2005) .........................................................................15, 16

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
   106 F.3d 1563 (Fed. Cir. 1997) ...............................................................................10

*Kalman v. Kimberly-Clark Corp.*,
   713 F.2d 760 (Fed. Cir. 1983) ...................................................................................2

*King Pharms., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010) ...............................................................................13

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007) .......................................................................................... *passim*

*Lannom Mfg. Co. v. U.S. Int'l Trade Comm'n*,
   799 F.2d 1572 (Fed. Cir. 1986) .................................................................................2

*Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*,
   485 F.3d 1157 (Fed. Cir. 2007) ...............................................................................10

*Leo Pharm. Prods., Ltd v. Rea*,
    726 F.3d 1346 (Fed. Cir. 2013) ................................................................................9

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ..............................................................................19

*Markman v. Lehman*,
    987 F. Supp. 25 (D.D.C. 1997) ...............................................................................14

*McNeil-PPC, Inc. v. L. Perrigo Co.*,
    337 F.3d 1362 (Fed. Cir. 2003) ................................................................................6

*MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*,
    731 F.3d 1258 (Fed. Cir. 2013) ..............................................................................12

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
    721 F.2d 1563 (Fed. Cir. 1983) ..............................................................................15

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ..............................................................................11

*Merck Sharp & Dohme B.V. v. Warner Chilcott Co., LLC*,
    No. 13-2088-GMS, 2016 WL 4497054 (D. Del. Aug. 26, 2016) ...........................17

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011) ....................................................................................................2

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999) ..............................................................................13

*Mitsubishi Chemical Corp. v. Barr Lab'ys, Inc.*,
    718 F. Supp. 2d 382 (S.D.N.Y. 2010), *aff'd,* 435 F. App'x 927 (Fed. Cir.
    2011) .......................................................................................................................16

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
    878 F.3d 1336 (Fed. Cir. 2018) ................................................................................5

*Muniauction, Inc. v. Thomson Corp.*,
    532 F.3d 1318 (Fed. Cir. 2008) ....................................................................10, 11, 12

*Newell Companies, Inc. v. Kenney Mfg. Co.*,
    864 F.2d 757 (Fed. Cir. 1988) ................................................................................10

*Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*,
    719 F.3d 1346 (Fed. Cir. 2013) ................................................................................9

*Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys. Inc.*,
    923 F.3d 1368 (Fed. Cir. 2019) ..............................................................................18

*Ohio Willow Wood Co. v. Alps S., LLC,*
    735 F.3d 1333 (Fed. Cir. 2013)........................................................................10

*Ormco Corp. v. Align Tech., Inc.,*
    463 F.3d 1299 (Fed Cir. 2006)........................................................................12

*Perfect Web Techs. v. InfoUSA, Inc.,*
    587 F.3d 1324 (Fed. Cir. 2009)........................................................................14

*Pfizer, Inc. v. Apotex, Inc.,*
    480 F.3d 1348 (Fed. Cir. 2007)........................................................................8, 9

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................3

*Purdue Pharma L.P. v. Faulding Inc.,*
    230 F.3d 1320 (Fed. Cir. 2000)........................................................................18

*Purdue Pharma L.P. v. Par Pharm., Inc.,*
    377 F. App'x (Fed. Cir. 2010) ........................................................................16, 17

*Purdue Pharma Prods. L.P. v. Par Pharm., Inc.,*
    642 F. Supp. 2d 329 (D. Del. 2009)........................................................................16

*Quad Env't Techs. Corp. v. Union Sanitary Dist.,*
    946 F.2d 870 (Fed. Cir. 1991)........................................................................3

*Richardson-Vicks Inc. v. Upjohn Co.,*
    122 F.3d 1476 (Fed. Cir. 1997)........................................................................9

*Schering Corp. v. Geneva Pharms.,*
    339 F.3d 1373 (Fed. Cir. 2003)........................................................................5

*Scripps Clinic & Rsch. Found. v. Genentech, Inc.,*
    927 F.2d 1565 (Fed. Cir. 1991)........................................................................4

*Shuffle Master, Inc. v. MP Games LLC,*
    553 F. Supp.2d 1202 (D. Nev. 2008)........................................................................16

*SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.,*
    225 F.3d 1349 (Fed. Cir. 2000)........................................................................6

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
    775 F.2d 1107 (Fed. Cir. 1985)........................................................................2

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983)........................................................................8

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
 726 F.2d 724 (Fed. Cir. 1984)........................................................................................3

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
 247 F.3d 1316 (Fed. Cir. 2001)......................................................................................6

*Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*,
 988 F. 2d 1165 (Fed. Cir. 1993)...................................................................................14

*Therasense, Inc. v. Becton, Dickinson & Co.*,
 593 F.3d 1325 (Fed. Cir. 2010)....................................................................................12

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
 617 F. 3d 1296 (Fed. Cir. 2010)...................................................................................17

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
 374 F.3d 1151 (Fed. Cir. 2004)...................................................................................1, 2

*Union Carbide Corp. v. Am. Can Co.*,
 724 F.2d 1567 (Fed. Cir. 1984)......................................................................................3

*Viskase Corp. v. Am. Nat. Can Co.*,
 261 F.3d 1316 (Fed. Cir. 2001)......................................................................................1

*Weatherchem Corp. v. J.L. Clark, Inc.*,
 163 F.3d 1326 (Fed. Cir. 1998)......................................................................................1

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
 683 F.3d 1356 (Fed. Cir. 2012)......................................................................................9

*WMS Gaming Inc. v. Int'l Game Tech.*,
 184 F.3d 1339 (Fed. Cir. 1999)....................................................................................11

*Wyers v. Master Lock Co.*,
 616 F.3d 1231 (Fed. Cir. 2010).................................................................................9, 16

**Statutes**

35 U.S.C. §§ 101 *et seq.*................................................................................................2

35 U.S.C § 102...........................................................................................................3, 4

35 U.S.C. § 102(a)(1)..................................................................................................3, 4

35 U.S.C. § 102(b) .........................................................................................................4

35 U.S.C § 103........................................................................................................4, 6, 8

35 U.S.C. § 112.......................................................................................................17, 18

35 U.S.C. § 112(a) ...........................................................................................................................17

35 U.S.C. § 282(a) .............................................................................................................................2

## I.    INTRODUCTION AND RESERVATION OF RIGHTS

Defendants MSN Laboratories Private Ltd. and MSN Pharmaceuticals Inc. ("MSN") (collectively, "Defendants" or "MSN") identify the following issues of law that remain to be litigated, with a citation of authority upon which they rely.

Defendants' identification of these legal issues is based on their understanding of the pleadings served and discovery taken in this action to date. If Plaintiffs offer legal arguments different from or in addition to those they have previously offered, Defendants reserves the right to contest those new legal arguments and to present any rebuttal.

To the extent any of these issues of law are deemed more properly an issue of fact rather than an issue of law, it should be so considered. Conversely, to the extent any issue of fact is deemed more properly an issue of law, that issue is incorporated by reference into this Statement.

The authorities cited herein are not exhaustive; Defendants may rely on authority not cited in this Statement. Further, the following list of issues of law to be litigated is not intended to encompass legal arguments Defendants may make in support of or in opposition to a motion for judgment as a matter of law.

Defendants reserve the right to further modify, supplement, and/or amend the Final Pretrial Order and the attachments thereto, including this Statement, after any future rulings by the Court and/or issues that remain open, until entry of the Final Pretrial Order.

## II.    INVALIDITY

1.    Patent invalidity is a complete defense to an allegation of patent infringement. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) (holding that a finding of invalidity is a complete defense to infringement); *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1323 (Fed. Cir. 2001) (same); *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d

1326, 1335 (Fed. Cir. 1998) ("[I]nvalidity operates as a complete defense to infringement for any product, forever[.]"). A patent is invalid if it fails to satisfy any of the conditions for patentability found in 35 U.S.C. §§ 101 *et seq.*

### A.    Burden of Proof

2.    A United States patent is afforded a presumption of validity under 35 U.S.C. § 282(a). This presumption requires that the party asserting invalidity at trial establish the facts supporting invalidity with clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011).

3.    The statutory presumption of validity, however, merely assumes the Patent Office properly did its job by considering all prior art or other evidence material to patentability. *See Lannom Mfg. Co. v. U.S. Int'l Trade Comm'n*, 799 F.2d 1572, 1575 (Fed. Cir. 1986). "[W]here the PTO has not considered facts relevant to an issue in suit, there is no reason to give deference to its action in issuing the patent and a court may find those facts controlling in determining whether the burden of proof has been sustained." *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 773 n.3 (Fed. Cir. 1983), *overruled in part on other grounds by SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1125 (Fed. Cir. 1985) (en banc); *see also Microsoft*, 564 U.S. at Syllabus (Where the United States Patent Office did not have all material facts before it, however, "its considered judgment may lose significant force.") (citing *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 427 (2007)). Indeed, in such circumstances, the burden to persuade the fact finder of an invalidity defense "by clear and convincing evidence may be easier to sustain." *Microsoft*, 564 U.S. at 111*; see also Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360 (Fed. Cir. 1984) (holding that evidence not before the PTO may carry more weight in a District Court action than evidence previously considered by the PTO). Thus, "[t]he courts are the final arbiter

of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner." *Quad Env't Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991).

### B.   Person of Ordinary Skill in the Art

4.   A patent and its prior art are viewed through the eyes of a person of ordinary skill in the art ("POSA") at the time the invention was made. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The person of ordinary skill in the art is a legal construct: a hypothetical person having experience in the relevant technical field who is presumed to know all of the relevant prior art. *See In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995); *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1576 (Fed. Cir. 1984) (describing the POSA as "the inventor working in his shop with the prior art references—which he is presumed to know—hanging on the walls around him"). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR*, 550 U.S. at 421.

### C.   Anticipation (35 U.S.C § 102)

5.   An invention is not patentable if it is described in a patent or a printed publication more than one year prior to the date of application for a patent. *See* 35 U.S.C. § 102(a)(1). Anticipation must be found in a single prior art reference. *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 302 (Fed. Cir. 1995); *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 726 (Fed. Cir. 1984). If a combination of references is needed to teach the claimed invention, then the invention may be rendered obvious by the prior art, but may not be anticipated by it. *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1267 (Fed. Cir. 1991) ("When

more than one reference is required to establish unpatentability of the claimed invention[,] anticipation under § 102 can not be found, and validity is determined in terms of § 103.").

6.      Nonetheless, one or more other references may be used to explain what the single anticipatory reference taught one of ordinary skill in the art. *See Scripps Clinic & Rsch. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991) (stating that "[t]he role of extrinsic evidence is to educate the decision-maker to what the reference meant to persons of ordinary skill in the field of the invention, not to fill gaps in the reference"); *see also In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995) ("[A] skilled artisan could take [the single reference's] teachings in combination with his own knowledge of the [prior] art and be in possession of the invention.").

7.      Moreover, an anticipatory reference must disclose and enable the claimed invention so as "to have placed the public in possession of it." *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985) (citing *In re Sasse*, 629 F.2d 675, 681 (C.C.P.A. 1980). Accordingly, a reference that discloses, but does not enable how to make, the later-claimed invention will not anticipate. *See id*. However, "additional references" may be relied on for anticipation under § 102(a)(1) (§ 102(b) (pre-AIA)) solely as evidence that, more than one year prior to [the] filing date, a method of preparing the claimed subject matter … would have been known by … one of ordinary skill in the art." *Bristol-Myers Squibb Co. v. Ben Venue Lab'ys, Inc.*, 246 F.3d 1368, 1379 (Fed. Cir. 2001) (*quoting Application of Samour*, 571 F.2d 559, 562 (C.C.P.A. 1978)) (*internal quotation omitted*). Thus, it is not necessary that the anticipating reference demonstrate that the claimed invention had "actually been made." *In re Donohue*, 766 F.2d at 533 ("[T]he fact that the author of a publication did not attempt to make his disclosed invention does not indicate one way or the other whether the publication would have been enabling."). Instead, all that must be shown, even through other references that do not antedate the reference, is that the later-claim subject matter "was in

4

possession of the public more than one year prior to the applicant's filing date." *Bristol-Myers*, 246 F.3d at 1379.

8.      If the prior art reference does not expressly set forth the subject matter of the claim, that reference still may anticipate if the claimed subject matter is inherent in the prior art disclosure. To establish inherency, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference." *Cont'l Can*, 948 F.2d at 1268. "Inherency … may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Id*. at 1269. A reference will be deemed to include an inherent feature if that feature is the "natural result" flowing from the reference's explicitly recited limitations. *Eli Lilly & Co. v. Barr Lab'ys, Inc.*, 251 F.3d 955, 970 (Fed. Cir. 2001) (*citing, inter alia, Cont'l Can*). Thus, a compound may be deemed to have been inherently disclosed by a reference where that reference teaches the process by which that compound would have been made. *See Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1380 (Fed. Cir. 2003) (affirming summary judgment of inherent anticipating of claims directed to DCL, a metabolite of loratadine, because the record established that DCL always forms as a natural result of administration of loratadine to a patient and because the administration of loratadine was disclosed in the prior art).

9.      Extrinsic evidence can be used to demonstrate what is "necessarily present" in a prior art embodiment even if the extrinsic evidence is not itself prior art. *See Hospira, Inc. v. Fresenius Kabi USA, LLC*, 946 F. 3d 1322, 1329 (Fed. Cir. 2020) *citing Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1345 (Fed. Cir. 2018) (allowing "non-prior art data" to be used to support inherency); *Schering Corp.* 339 F.3d at 1377 (finding that the prior art need not recognize the inherent property). Moreover, the work of the inventor or the patentee can

be used as the evidence of inherency. *See, e.g., Alcon Rsch., Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1369 (Fed. Cir. 2012) (analyzing inherency based on the disclosure of the "patent itself"); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327-28 (Fed. Cir. 2001) (finding that features were inherent "as evidenced by [the patentee]'s own documents"). The later evidence is not itself prior art; it only helps to elucidate what the prior art consisted of. *See Hospira, Inc.*, 946 F. 3d at 1330.

### D.    Obviousness (35 U.S.C § 103)

10.    Under 35 U.S.C. § 103, a patent is invalid as obvious if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Obviousness is ultimately a legal conclusion, based upon underlying factual inquiries concerning: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness. *See Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1368 (Fed. Cir. 2003).

11.    Obviousness may be based on one or more references, although either the prior art as a whole, or knowledge generally available to one of ordinary skill in the art, should suggest the desirability, and thus, the obviousness of combining and modifying the prior art to arrive at the claimed invention. *See SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000); *In re Beattie*, 974 F.2d 1309, 1312 (Fed. Cir. 1992) ("As long as some motivation or suggestion to combine the references is provided by the prior art taken as a whole, the law does not require that the references be combined for the reasons contemplated by the inventor."); *In re*

6

*Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1069 (Fed. Cir. 2012) (internal citation and quotation marks omitted) (To prove that a patent is obvious, a party must demonstrate "that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so."); *see also Amgen Inc. v. F. Hoffmann-La Roche, Ltd.,* 580 F.3d 1340, 1362 (Fed. Cir. 2009) ("An obviousness determination requires that a skilled artisan would have perceived a reasonable expectation of success in making the invention in light of the prior art.").

12.    While an analysis of any teaching, suggestion, or motivation to combine known elements is useful to an obviousness analysis, the overall obviousness inquiry must be expansive and flexible. *See KSR*, 550 U.S. at 415, 419. Indeed, the obviousness analysis "need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418. Rather, "[u]nder the correct analysis, any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.* at 420. Moreover, a "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. More specifically, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* at 417.

13.    The mere fact that results are not entirely predictable in advance, and must be confirmed through testing, does not mean that subject matter is nonobvious. "[A] rule of law

equating unpredictability to patentability" is improper because "the expectation of success need only be reasonable, not absolute." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007). That is, "obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Id.* Further, where "there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR*, 550 U.S. at 421. "If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *Id.* In such instances "the fact that a combination was obvious to try might show that it was obvious under § 103." *Id.* In simpler terms, "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." *Id.* at 417.

14.    An invention is also obvious when it would have been "obvious to try." "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR*, 550 U.S. at 421; *see also In re Kubin*, 561 F.3d 1351 (Fed. Cir. 2009); *Bayer Schering Pharma AG v. Barr Lab'ys, Inc.*, 575 F.3d 1341, 1350 (Fed. Cir. 2009) (affirming obviousness where prior art "funneled" choices to only limited options); *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008); *Graham*, 383 U.S. at 17-18; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1536-37 (Fed. Cir. 1983); *Pfizer*, 480 F.3d at 1362 (finding it would have been obvious to try to create the claimed acid addition salt because it only required routine testing).

15.    "One of the ways in which a patent's subject matter can be proved obvious is by noting that there existed at the time of invention a known problem for which there was an obvious

8

solution encompassed by the patent's claims." *KSR*, 550 U.S. at 419-20. The "known problem" is not limited to the problem motivating the patentee as the patentee's problem "may be only one of many addressed by the patent's subject matter." *Id.* at 420.

### 1.    Secondary Considerations

16.    The use of hindsight is not permitted when determining whether a claim would have been obvious to one having ordinary skill in the art. *See id.* at 421 (cautioning against "the distortion caused by hindsight bias" and obviousness "arguments reliant upon ex post reasoning"). To protect against the improper use of hindsight in a determination that an invention would have been obvious, the Court is required to consider objective (or "secondary") considerations of nonobviousness. *See, e.g., Leo Pharm. Prods., Ltd v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013).

17.    Once a party challenging the validity of a patent has made a *prima facie* case of obviousness, the burden of production shifts to the patentee to rebut that showing, typically with objective indicia of nonobviousness. *See Pfizer*, 480 F.3d at 1360 ("It is true that once a challenger has presented a prima facie case of invalidity, the patentee has the burden of going forward with rebuttal evidence."); *see also Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1353-54 (Fed. Cir. 2013); *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1362-64 (Fed. Cir. 2012).

18.    Evidence of secondary considerations is "relevant only in a close case where all other proof leaves the question of invention in doubt." *Dow Chem. Co. v. Halliburton Oil Well Cementing Co.*, 324 U.S. 320, 330 (1945). Indeed, it is well-established that "secondary considerations of nonobviousness … simply cannot overcome a strong prima facie case of obviousness." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *see Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1483-84 (Fed. Cir. 1997) (holding that mere presentation

9

of evidence of secondary considerations does not override a finding of obviousness; courts must consider the "totality of the evidence" in determining obviousness); *see also Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007); *Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768-69 (Fed. Cir. 1988). "[W]here a claimed invention represents no more than the predictable use of prior art elements according to established functions, as here, evidence of secondary indicia are frequently deemed inadequate to establish non-obviousness." *Ohio Willow Wood Co. v. Alps S., LLC,* 735 F.3d 1333, 1344 (Fed. Cir. 2013).

19.    Any evidence of secondary considerations must be related to and commensurate in scope with the claimed features of the alleged invention. *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2013); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327-28 (Fed. Cir. 2008). To be probative of nonobviousness, a patentee must demonstrate that any secondary considerations are commensurate in scope with the claims. *See In re Peterson*, 315 F.3d 1325, 1330-31 (Fed. Cir. 2003); *see also Allergan v. Apotex*, 754 F.3d 952, 963–65 (Fed. Cir. 2014).

20.    These secondary considerations include, *inter alia*, commercial success, long felt but unsolved needs, surprising and unexpected results and industry praise. *See Graham*, 383 U.S. at 17-18; *Bayer Healthcare Pharms., Inc. v. Watson Pharms., Inc.*, 713 F.3d 1369, 1377 (Fed. Cir. 2013); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1376-80 (Fed. Cir. 2000). In determining whether or not claims are obvious, the court weighs secondary considerations, to the extent they exist, along with the other parts of the obviousness analysis to determine whether the claims would have been obvious to a person of ordinary skill in the art. *See Alcon*, 687 F.3d at 1365-66.

21.    Secondary considerations "must be due to the merits of the claimed invention beyond what was readily available in the prior art." *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106

F.3d 1563, 1571 (Fed. Cir. 1997). Evidence of secondary considerations is irrelevant to a court's obviousness inquiry where such evidence is based on unclaimed elements previously disclosed in the prior art. *Muniauction*, 532 F.3d at 1327-28; *see also Ecolochem, Inc. v. Southern Cal. Edison Co.*, 91 F.3d 169, n.4 (Fed. Cir. 1996).

22.     Secondary considerations evidence may rely on a commercial embodiment of the alleged invention. *See, e.g., Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1570 (Fed. Cir. 1996). But the commercial embodiment relied upon must be coextensive with the scope of the claims of the patent-in-suit. *Muniauction*, 532 F.3d at 1327-28. Courts have discounted secondary considerations evidence where the relied-upon commercial embodiment features elements of more than one patent, specifically where the patentee fails to distinguish between features related to the patent-in-suit as opposed to non-suit patents. *See Institute Pasture v. Focarino*, 738 F.3d 1337, 1349 (Fed. Cir. 2013); *In re Huai-Hung Kao*, 639 F.3d at 1068 (patentee must show that the secondary consideration is attributable to the formulation and not the active ingredient); *see Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376-77 (Fed. Cir. 2005) (finding that secondary considerations do not have probative value when the patent owner has a separate patent that prevents market entry of others).

### a.     Nexus

23.     "The patentee bears the burden of showing that a nexus exists between the claimed features of the invention and the objective evidence offered to show non-obviousness." *WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1359 (Fed. Cir. 1999). A "nexus" is a "legally and factually sufficient connection" between the objective evidence and the claimed invention. *See In re Paulsen*, 30 F.3d 1475, 1482 (Fed. Cir. 1994) (quoting *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988)).

11

24. To fulfill the nexus requirement, the proffered evidence of secondary considerations must also be commensurate in scope with the asserted claims. *See Therasense, Inc. v. Becton, Dickinson & Co.,* 593 F.3d 1325, 1336 (Fed. Cir. 2010); *Muniauction,* 532 F.3d at 1328 ("[S]econdary considerations may presumptively be attributed to the patented invention only where 'the marketed product embodies the claimed features, and is coextensive with them.'") (citations omitted). Thus, if evidence of secondary considerations relates to a narrow aspect of a much broader claim, such evidence is not commensurate with the scope of the claims and fails to establish the nonobviousness of the asserted claims. *Therasense,* 593 F.3d at 1336 ("Because the claims are broad enough to cover devices that either do or do not solve the 'short fill' problem, Abbott's objective evidence of non-obviousness fails because it is not 'commensurate in scope with the claims which the evidence is offered to support.'") (quoting *In re Grasselli,* 713 F.2d 731, 743 (Fed. Cir. 1983); *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.,* 731 F.3d 1258, 1264-65 (Fed. Cir. 2013) (holding that district court erred where its "analysis of the secondary considerations of nonobviousness involved only fragrance-specific uses, but the [asserted claims] are not fragrance-specific…").

25. Nexus is relevant to all secondary considerations and Federal Circuit precedent requires a patentee to prove the required nexus before the court may rely on any secondary consideration. *Muniauction, Inc.,* 532 F.3d at 1327-28 (Fed. Cir. 2008) (alteration in original) (citation omitted); *Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1311-12 (Fed Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is only significant if there is a nexus between the claimed invention and the commercial success."); *In re GPAC Inc.,* 57 F.3d at 1580 (holding that with respect to secondary considerations of nonobviousness, the "proponent must establish a nexus between the evidence and the merits of the claimed invention"); *Cable Elec.*

12

*Prods., Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1026 (Fed. Cir. 1985) (A "nexus between the merits of the claimed invention and the evidence of secondary considerations is required in order for the evidence to be given substantial significance in an obviousness decision."), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1358-59 (Fed. Cir. 1999).

26.    "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *In re Huai-Hung Kao*, 639 F.3d at 1068 (Fed. Cir. 2011).

27.    The patentee must present specific evidence showing nexus; opinion is not enough. *See In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (finding that an "inventor's opinion as to the purchaser's reason for buying the product … alone, is insufficient. Instead, the applicant must submit some factual evidence that demonstrates the nexus between the sales and the claimed invention[.]").

28.    Nexus further requires a direct connection to the claimed features of the invention as recited in the language of the patent claims. *B.E. Meyers & Co. v. United States*, 47 Fed. Cl. 375, 378-79 (2000) (finding that "[d]espite this definitional elasticity, plaintiff fails to provide any specific examples of a direct connection between its know-how, improvements, and manufacturing processes, and the claimed features of its invention as embodied in the language of the particular patent claims it alleges were infringed"); *see also King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1281 (Fed. Cir. 2010) ("King has not shown any nexus between the drug's alleged commercial success and the specific invention claimed[.]").

13

### b.    Long-felt, but unmet need

29.    "Establishing a long-felt need requires a showing that others skilled in the art in fact perceived a need and that this perception persisted over a long period of time without resolution by the prior art." *Markman v. Lehman*, 987 F. Supp. 25, 43 (D.D.C. 1997); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 816 F.3d 788, 804-05 (Fed. Cir. 2016), *vacated in part on reh'g en banc*, 2016 WL 5864573 (Fed. Cir. Oct. 7, 2016). The need is "analyzed as of the date of an articulated identified problem and evidence of efforts to solve that problem." *Texas Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F. 2d 1165, 1178 (Fed. Cir. 1993); *Markman*, 987 F. Supp. at 43 *aff'd*, 178 F.3d 1306 (Fed. Cir. 1998) (establishing long-felt need requires a showing that others skilled in the art in fact perceived a need and that this perception persisted over a long period of time without resolution by the prior art).

30.    "The idea behind this secondary consideration is that if a particular problem is identified by an industry but left unsolved, the failure to solve the problem (despite the incentive to do so) supports a conclusion of nonobviousness." *Apple Inc.*, 816 F.3d at 804.

31.    Plaintiff must show that the prior art products were ineffective and/or inadequate in the context of the claimed method of treatment. *See Electro Sci. Indus., Inc. v. Gen. Scanning Inc.*, 247 F.3d 1341, 1352 (Fed. Cir. 2001) (holding that because prior art products were effective for the purpose of the claimed method, there was no long-felt need or failure of others for a new product to practice the method).

32.    Plaintiff must also show that the alleged invention actually fulfilled a specific long-felt need. *See Perfect Web Techs. v. InfoUSA, Inc.*, 587 F.3d 1324, 1332-33 (Fed. Cir. 2009) (finding no long-felt need without evidence or data showing the invention satisfied any long-felt need); *In re Kahn*, 441 F.3d 977, 990 (Fed. Cir. 2006) (requiring evidence of long-felt but

14

unresolved need and finding inappropriate a request that the court take judicial notice of long-felt need); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2005); *In re Nettel*, 972 F.2d 1354, 1992 WL 124285, at \*3 (Fed. Cir. 1992) ("Just because an invention did not exist before does not necessarily mean that there was a need that was long felt."); *see Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) (holding that evidence of long-felt need fails to overcome a *prima facie* showing of obviousness when plaintiff failed to link the need to the advance claimed); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1366 (Fed. Cir. 2001) (holding that the patentee could not rebut obviousness case when it presented no evidence that the invention solved a long-felt need); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1575 (Fed. Cir. 1983) (finding no long-felt need when the industry did not recognize the invention as fulfilling such a need).

### c.    Unexpected Results

33.    Secondary considerations of nonobviousness, including unexpected results, "must be taken into account" when present. *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967, 977 (Fed. Cir. 2014). "To be particularly probative, evidence of unexpected results must establish that there is a difference between the results obtained and those of the closest prior art, and that the difference would not have been expected by one of ordinary skill in the art at the time of the invention." *Id*. Further, for objective evidence of secondary considerations to be relevant, there must be a nexus between the merits of the claimed invention and the objective evidence. *In re GPAC Inc.*, 57 F.3d at 1580. "Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention." *In re Huai-Huang Kao*, 639 F.3d at 1068.

34.      Courts have found that a lack of showing of unexpected results supports a finding of obviousness. *See In re Huang*, 100 F.3d at 138–39 (affirming the Board's determination that "[b]ecause the application contained no evidence of unexpected results, the Board concluded that the prior art created a prima facie case of obviousness.").

### d.      Copying

35.      Copying requires duplication of features of the patentee's work based on access to that work, lest all infringement be mistakenly treated as copying. *Iron Grip Barbell,* 392 F.3d at 1325. Not every competing product that arguably falls within the scope of a patent is evidence of copying. *Id.* Otherwise every infringement suit would automatically confirm the nonobviousbess of the patent. *Id.* To show copying the plaintiff must prove that a specific product was replicated. *Wyers*, 616 F.3d at 1246; *see Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp.2d 1202 (D. Nev. 2008).

36.      "Evidence of copying in the ANDA context is not probative of nonobviousness because a showing of bioequivalence is required for FDA approval." *Bayer Healthcare Pharms.*, 713 F.3d at 1377; *cf. Allergan Inc. v. Watson Lab'ys, Inc.-Fla.,* 869 F. Supp. 2d 456, 485 (D. Del. 2012) (Sleet, J.) (copying not "strong" evidence); *see, e.g.*, *Purdue Pharma Prods. L.P. v. Par Pharm., Inc.,* 642 F. Supp. 2d 329, 373 (D. Del. 2009) ("[A] showing of copying, which Plaintiffs have provided here, is not compelling evidence of non-obviousness in the Hatch-Waxman context."); *Purdue Pharma Prods. L.P. v. Par Pharm., Inc.* 377 F. App'x 978, 983 (Fed. Cir. 2010) (we do not find compelling Purdue's evidence of copying in the ANDA context where a showing of bioequivalency is required for FDA approval.); *Mitsubishi Chemical Corp. v. Barr Lab'ys, Inc.,* 718 F. Supp. 2d 382, 443–444 (S.D.N.Y. 2010), *aff'd,* 435 F. App'x 927 (Fed. Cir. 2011); *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 2001 U.S. Dist. LEXIS 18361 (S.D. Ind. Oct. 12, 2001)

16

("[T]he ANDA procedures require generic drug manufacturers to copy the approved drug. Variations undermine the FDA's ability to assume that if the patented drug is safe and effective, the generic competitor will also be safe and effective."); *Duramed Pharms., Inc. v. Watson Labs, Inc.*, 2011 U.S. Dis. LEXIS 64175 (D. Nev. 2011) ("[A]n initial approved generic version of a drug . . . cannot constitute evidence of copying because of the statutory incentives to copy a patented drug."); *see, e.g.*, *Merck Sharp & Dohme B.V. v. Warner Chilcott Co., LLC,* No. 13-2088-GMS, 2016 WL 4497054, at *14 (D. Del. Aug. 26, 2016) ("Further, 'demonstration that a defendant has copied a patented invention is not compelling evidence of non-obviousness in the Hatch-Waxman context due to the unique nature of the ANDA process.'" (quoting *Allergan, Inc.,* 869 F. Supp. 2d at 485); *Purdue Pharma Prod. L.P.*, 377 F. App'x at 983.

### e. Skepticism

37.    To establish skepticism of others, it is Plaintiffs' burden to provide evidence that others in the field doubted the feasibility of the claimed invention. *See, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F. 3d 1296, 1304 (Fed. Cir. 2010). However, evidence of skepticism must be specific to the invention, not just the general field, to be persuasive. *See, e.g.*, *Auris Health, Inc. v. Intuitive Surgical Operations, Inc.*, 32 F.4th 1154, 1159 (Fed. Cir. 2022).

### f. Industry Praise or Recognition

38.    Evidence of industry praise must be directed to the challenged claims, not just the general field. *See, e.g., Ancora Techs., Inc. v. Roka, Inc.,* 140 F.4th 1351, 1360-1361 (Fed. Cir. 2025).

### E. Written Description and Enablement (35 U.S.C. § 112)

39.    35 U.S.C. § 112(a) recites: "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise,

and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same…"

40.     To satisfy the "written description" requirement, "the disclosure must … convey with reasonable clarity to those skilled in the art that … [the inventor] was in possession of the invention." *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (alterations in original); *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1383 (Fed. Cir. 2009) ("[T]he purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not … ."); *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011) (The written description requirement is satisfied only if the inventor "convey[s] with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention, and demonstrate[s] that by disclosure in the specification of the patent."); *Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Lab'ys. Inc.,* 923 F.3d 1368, 1376 (Fed. Cir. 2019). Under this requirement, the patent's specification must describe what is claimed with sufficient detail such that a person of ordinary skill in the art can conclude that "the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1351 (Fed Cir. 2010) (citation omitted); *see also Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.,* 541 F.3d 1115, 1122 (Fed. Cir. 2008) ("[T]he applicant must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention,' and demonstrate that by disclosure in the specification of the patent." (citation omitted)); *Nuvo*, 923 F.3d at 1382.

41.     Where a genus encompasses numerous compounds, the specification must supply "blaze marks" to direct POSAs to particular compounds. *Purdue Pharma*, 230 F.3d at 1326-27.

18

Possession of a claimed invention is established by describing the claimed invention with all of its claimed limitations. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997). Conception of claimed species not reduced to practice can be incomplete where there is "uncertainty that so undermines the specificity of the inventor's idea that it is not yet a definite and permanent reflection of the complete invention as it will be used in practice." *Burroughs Wellcome Co. v. Barr Laby's, Inc.*, 40 F.3d 1223, 1229 (Fed. Cir. 1994).

42.    Furthermore, a patent is "not a hunting license" but "compensation for its successful conclusion." *Brenner v. Manson*, 383 U.S. 519, 536 (1966). 35 U.S.C. § 112 protects the public from overreaching claims directed to a mere wish, plan, or hypothesis for achieving the claimed invention. *Ariad Pharms.*, 598 F.3d at 1350 (claims "failed to provide an adequate written description" when they involved "no more than a 'wish' or 'plan' for obtaining" what was claimed); *In re '318 Pat. Infringement Litig.*, 583 F.3d 1317, 1327 (Fed. Cir. 2009) (non-enabled specification was hypothesis or research proposal for method claims given lack of adequate test data and asserted unpredictability of the art); *see also Amgen Inc. v. Sanofi*, 872 F.3d 1367, 1375 (Fed. Cir. 2017) ("[T]he use of post-priority-date evidence to show that a patent does not disclose a representative number of species of a claimed genus is proper.").

19